**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Carlton Cameron COOPER, Defendant–Appellant.**

No. 88–5077.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 13, 1988.

Decided Jan. 12, 1989.

84

Drewry B. Hutcheson, Jr., Alexandria, Va., for defendant-appellant.

Kenneth Melson, First Asst. U.S. Atty. (Henry E. Hudson, U.S. Atty., Alexandria, Va., W. Neil Hammerstrom, Jr., Sp. Asst. U.S. Atty., Washington, D.C., on brief) for plaintiff-appellee.

Before RUSSELL and WILKINS, Circuit Judges and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

In a jury trial Cooper was convicted of a violation of 18 U.S.C.A. § 878 (West Supp. 1988) for threatening the life of the Prime Minister of India, Rajiv Gandhi. Unfortunately, at his trial Cooper chose to represent himself. On appeal, he is represented by counsel, but we find no error of law in his trial, and we may not redetermine the facts.

## I.

Over a period of years Cooper had expressed opposition to the policies of those members of the Gandhi family holding high public office in India. He expressed his opposition to them to several members of the government of the United States.

Prime Minister Rajiv Gandhi planned a visit to the United States in October, 1987. In anticipation of that visit, the Secret Service investigated people who they believed might pose some threat to Gandhi's safety. In connection with that investigation, Special Agent James Bartee of the Secret Service interviewed Cooper. Cooper told Bartee that he disliked Gandhi's foreign policy and hoped that Gandhi would be removed from office, but he made no threats to injure Gandhi. Several weeks later, however, Cooper telephoned Bartee. In that conversation he did make some threatening statements about Gandhi but said that he would attempt to kill Gandhi only if the C.I.A. provided him with funds and that, with C.I.A. funding, he would attempt an assassination outside of the United States.

At about that time, Cooper telephoned Major Labadie, attached to the Office of the Joint Chiefs of Staff at the Pentagon. According to Labadie, Cooper told him that the Secret Service had given him $50,000 "to blow Gandhi's brains out" and that he had "scoped out four areas in D.C. to blow [Gandhi's] brains out." Labadie testified that he thought Cooper's statements were made in a serious vein and not in jest. On

cross-examination, Labadie testified that he thought it was "inconceivable" that the Secret Service would have provided money and a weapon to a potential assassin of Prime Minister Gandhi. Nevertheless, the jury convicted Cooper of having made unlawful threats against Gandhi in his telephonic conversation with Major Labadie.

## II.

We find no deficiency in the indictment. *Russell v. United States,* 369 U.S. 749, 765–69, 82 S.Ct. 1038, 1047–50, 8 L.Ed.2d 240 (1962); *see also United States v. Hooker,* 841 F.2d 1225, 1227 (4th Cir.1988) (*en banc*). Indeed, the indictment contained abundant specificity.

■ Cooper's primary contention is that the words attributed to him did not constitute a threat within the penal reach of 18 U.S.C.A. § 878 (West Supp.1988). We find no cases construing that section, but one construing a closely related section, 18 U.S.C.A. § 871 (1976 & West Supp.1988) prohibiting threats against the President of the United States, is illuminating.

In *Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (per curiam) Watts, who was about to be inducted into the army, attended an anti-war rally. There, he allegedly stated "I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Id.* at 706, 89 S.Ct. at 1400.

The Supreme Court concluded that the statute must be construed narrowly. It runs against our traditional commitment to free and robust political speech, and First Amendment liberties are implicated. However, construed closely so as to exclude political hyperbole and jest, the Congress certainly has the power to punish true threats against the President of the United States and foreign dignitaries, and to align the criminal laws of this country against terrorism.

The Court held in *Watts* that the alleged statement was beyond the reach of the statute. This alleged statement was conditional, and it appeared to have been made in jest. It was made at a political rally. The listeners responded with laughter.

Here, in contrast, Major Labadie thought this statement was made in a serious vein. Cooper was not convicted for having made the statement that he would kill Gandhi outside the United States if paid $50,000 by the C.I.A. to do it. The charge based upon that statement was dismissed, for it was clearly conditional, and its premise is absurd. He was convicted of having made the statement to Major Labadie that he had checked out and chosen four sites in the District of Columbia for the assassination of Gandhi.

## III.

■ Cooper also contends that his statement does not satisfy the "willful" requirement of *United States v. Patillo,* 431 F.2d 293 (4th Cir.1970). In *Patillo* we held that even though the words were uttered willfully they may not be the subject of a criminal conviction unless made with a present intention to do the threatened harm. *Id.* at 297–98.

There was a basis for such an inference by the jury. Cooper's opposition to Gandhi had been freely expressed as had been his wish that Gandhi be deposed. There was evidence that he recently attended a gun show. Against that background, the statement that he checked out four areas in Washington in which to kill Gandhi is reasonably susceptible to the inference drawn by the jury that Cooper had a present intention to shoot Gandhi.

## IV.

■ Cooper complains of restrictions upon his testimony about his personal political views. They were irrelevant in this case because there is no contention here that his conversation with Major Labadie was a political discussion.

Moreover, in all of Cooper's testimony, the jury was informed of Cooper's personal political views.

## V.

We find no infirmity in the conviction. AFFIRMED.