**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

FLORENCE LOCKHART, a/k/a Florence
Rebecca Lockhart,
*Defendant-Appellant.*

No. 03-4815

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-03-220)

Argued: May 5, 2004

Decided: September 8, 2004

Before WIDENER and GREGORY, Circuit Judges,
and C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Judge Gregory and Senior Judge Beam concurred.

## COUNSEL

**ARGUED:** Robert James Wagner, Assistant Federal Public
Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Rich-
mond, Virginia, for Appellant. Brian D. Miller, Assistant United

States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Frank W. Dunham, Jr., Federal Public Defender, Alexandria, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Michael J. Elston, Assistant United States Attorney, Alexandria, Virginia; Michael C. Wallace, Sr., Assistant United States Attorney, Richmond, Virginia, for Appellee.

---

## OPINION

WIDENER, Circuit Judge:

Florence Lockhart appeals from her conviction for making a threat to kill or injure the President of the United States. Miss Lockhart argues that the indictment was defective, that the evidence presented was insufficient to support a conviction, and that her actions were protected by the First Amendment. We affirm.

### I.

On April 14, 2003, Florence Lockhart knocked on the door of the manager's office at a Food Lion grocery store in Stafford County, Virginia. Pat Percy, a Food Lion employee, answered the door. Miss Lockhart asked to speak with a manager, and Percy notified Sherry Lee Rittenhour, the Food Lion manager.

When Miss Rittenhour approached Miss Lockhart, Miss Lockhart began asking questions about Food Lion's available job positions and hiring practices. During the conversation, as described by Miss Rittenhour, Miss Lockhart became "uptight" and raised her voice. After being told that there must be a review of applications and interviews before hiring, Miss Lockhart gave Miss Rittenhour a letter and said that once Miss Rittenhour read the letter she would give Miss Lockhart a job by Friday. Miss Lockhart then left the Food Lion. Miss Rittenhour returned to the manager's office and, in the presence of Pat Percy, opened the letter.

The letter contains a number of complaints and assertions about the United States government. The letter begins with the statement that

"[s]ince George Bush is busy killing people in Iraq I decided to take charge and run America. I don't know if you have noticed but America has some SERIOUS problems . . . ." The final sentence of the letter states "[i]f George Bush refuses to see the truth and uphold the Constitution I will personally put a bullet in his head." After reading the letter, Miss Rittenhour immediately reported the threat to her supervisor and the police.

Miss Lockhart had written letters in the past, which were in the possession of the Secret Service, and at the time she delivered her letter at the Food Lion, the Secret Service already had a file 6-8 inches thick of letters from Miss Lockhart. In September 1992, after Miss Lockhart wrote a letter containing a threat to the President and mailed it to Apple Computer Corporation, a Secret Service agent visited Miss Lockhart and warned her that her threats violated the law and could result in imprisonment. The Secret Service visited Miss Lockhart at least one other time, in February 2003, to warn her about the consequences of threatening the President.

Miss Lockhart was indicted on account of the April, 2003 Food Lion letter, on June 18, 2003, in the United States District Court for the Eastern District of Virginia for threatening the President of the United States in violation of 18 U.S.C. § 871(a). Miss Lockhart pleaded not guilty and waived her right to a jury trial. She was tried by the district court, found guilty and sentenced to 21 months imprisonment. Miss Lockhart timely appealed.

## II.

Miss Lockhart raises three issues on appeal. First, she argues that the indictment was defective because it failed to allege an essential element of a claim under 18 U.S.C. § 871(a). Second, Miss Lockhart claims the government failed to prove she had the necessary intent required under § 871(a). Finally, Miss Lockhart argues that the threat contained in her letter was protected by the First Amendment. We address these issues in turn.

A.   Sufficiency of the Indictment

Miss Lockhart first argues that the indictment was defective because it failed to allege that she had the present intent to restrict the

President's movements. Miss Lockhart argues that this is an essential element of the offense for which she was convicted.

An indictment is sufficient if it states each of the essential elements of the offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling*, 418 U.S. at 117 (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)).

The statute governing threats against the President, 18 U.S.C. § 871(a) (1995), prohibits any person from "knowingly and willfully . . . [making] any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States . . . ." This language has been interpreted to include two major elements: (1) the proof of "a true threat" and (2) that the threat is made "knowingly and willfully." *United States v. Patillo*, 428 F.2d 13, 16 (4th Cir. 1971) (en banc, adhered to panel opinion, *United States v. Patillo*, 431 F.2d 293, 295 (4th Cir. 1970)).

Here, the indictment charged:

> "On or about April 14, 2003, in the Eastern District of Virginia, the defendant, FLORENCE LOCKHART, knowingly and willfully made a threat to inflict bodily harm and to take the life of the President of the United States, stating that "if George Bush refuses to see the truth and uphold the Constitution, I will personally put a bullet in his head."

The language in the indictment uses the words of the statute and charges both the existence of a threat and that the threat be made knowingly and willfully. Thus, the indictment correctly states the essential elements of the offense.

Miss Lockhart argues, however, that she was convicted not of knowingly or willfully threatening the president, but instead of knowingly or willfully restricting the movements of the president. Miss

Lockhart argues that this additional element of § 871(a) was created by this court's en banc decision in *United States v. Patillo*, 438 F.2d at 15. Miss Lockhart argues that, because the district court convicted her based on her intent to restrict the president's movements, she was convicted of a charge not contained in the indictment.

We reject this argument. Our decision in *Patillo* did not create an additional element of the offense under 18 U.S.C. § 871(a). Our discussion in *Patillo* of the intent to restrict the President's movements was part of an illustration of the ways in which the government may prove that a threat was made "knowingly and willfully." *Patillo*, 438 F.2d at 15-16. Specifically, we stated that "[w]hen a threat is published with an intent to disrupt presidential activity, we think there is sufficient *mens rea* . . . ." *Patillo*, 438 F.2d at 15-16 (emphasis added). We further stated that:

> We think that an essential element of guilt is a present intention either to injure the President, or incite others to injure him, or to restrict his movements, and that the trier of fact may find the latter intention from the nature of the publication of the threat, i.e., whether the person making the threat might reasonably anticipate that it would be transmitted to law enforcement officers and others charged with the security of the President.

*Patillo*, 438 F.2d at 16. This language makes clear that the intent to restrict the president's movements is but one way of proving intent—that is, the "knowingly or willfully" element of the offense. Therefore, Miss Lockhart's claim that the intent to restrict the movements of the President is a third element of 18 U.S.C. § 871(a) is without merit. Both of the essential elements of the offense were contained in the indictment, which used the words of the statute itself. See *Hamling*, 418 U.S. at 87. Accordingly, we reject Miss Lockhart's claim that the indictment was insufficient.

B.   Sufficiency of the Evidence

In addition to challenging the indictment, Miss Lockhart also claims the government failed to prove she had the necessary intent

under the statute.[1] For the reasons that follow, we find sufficient evidence to support Miss Lockhart's conviction.

The standard of review in criminal cases where the district court sits in judgment without a jury is well-settled. We review findings on factual issues other than the ultimate issue of guilt using the clearly erroneous test. On the ultimate issue of guilt, we review the district court's finding to determine if it is supported by substantial evidence. *United States v. Bales*, 813 F.2d 1289, 1293 (4th Cir. 1987). After examining the record in this case, we hold that the district court's finding of guilt is supported by substantial evidence and must be affirmed.

At trial, the government produced evidence that Miss Lockhart presented the threat in writing to management at a Food Lion grocery store. The government also showed that Lockhart was aware that law enforcement investigated her threats because she was visited by Secret Service agents after making threats in the past.

Before finding Lockhart guilty, the district court stated:

> Here you went to the trouble to get an audience with people
> in responsible positions at the Food Lion, and had with you
> a document that you apparently had previously prepared.
> And there is no doubt in my mind that at the time you deliv-
> ered that to the personnel at Food Lion you knew that it
> would go up the chain of command, and that in due course
> it would wind up in the hands of law enforcement people,

---

[1]In addition to challenging the sufficiency of the evidence generally, Miss Lockhart claims specifically that the government failed to prove she had the intent to injure the President. For the reasons stated in part A above, we reject Miss Lockhart's claim that the government must prove actual intent to injure the President. While proof of a present intent to injure the President is one way to satisfy the "knowingly or willfully" element of the offense, that element is also satisfied by proof that the defendant intended to incite others to injure the President or that the defendant intended to restrict the President's movements. *Patillo*, 438 F.2d at 15-16.

and that they would take it seriously and communicate it on up and down the line.[2]

As we noted in *Patillo*, the knowingly and willfully element may be satisfied by a showing that the defendant would "reasonably anticipate that [the threat] would be transmitted to law enforcement officers and others charged with the security of the President." *Patillo*, 438 F.2d at 16. Given the evidence of Miss Lockhart's past experience with the Secret Service, the district court's finding that Miss Lockhart "knew that in due course [the threat] would wind up in the hands of law enforcement" is not clearly erroneous, and the guilty verdict is supported by substantial evidence.

## C.   First Amendment

Finally, Miss Lockhart argues that her conduct was not a "true threat" under *Watts v. United States*, 394 U.S. 705, 707-708 (1969), and therefore is protected by the First Amendment. In *Watts*, the Supreme Court drew a distinction between threats that are "political hyperbole" and thus entitled to constitutional protection, and "true threats" that are not protected. *Watts* involved statements made at an anti-war rally at the Washington Monument in 1966. After referring to his draft classification, the defendant stated "[i]f they ever make me carry a rifle, the first man I want to get in my sights is L.B.J." The crowd laughed after the defendant made the threat. *Watts*, 394 U.S. at 706. To determine whether this threat was a "true threat," the Court considered the context in which the threat was made, including "the expressly conditional nature of the statement" and "the reaction of the listeners." *Watts*, 394 U.S. at 708.

We had occasion to consider the *Watts* holding in *United States v. Cooper*, 865 F.2d 83, 85 (4th Cir. 1985). *Cooper* involved a threat on a foreign dignitary under 18 U.S.C. § 878. The *Cooper* defendant called the Pentagon and explained that he was hired by the Secret Ser-

---

[2]We note that under Fed. R. Crim. P. 23(c), the district court is not required to make specific findings of fact unless requested by a party before a finding of guilt is pronounced. There is no evidence in the record that such a finding was requested, although the district court chose to make its findings specific before pronouncing guilt.

vice to kill the Indian Prime Minister and had "scoped out four areas in D.C. to blow [the Prime Minister's] brains out." *Cooper*, 865 F.2d at 84. We distinguished the facts in *Cooper* from *Watts*, noting that the *Watts* threat was made at a political rally and was apparently made in jest, as evidenced by the crowd's laughter. *Cooper*, 865 F.2d at 85. In *Cooper*, however, the Pentagon officer who heard the threat "thought [the] statement was made in a serious vein." *Cooper*, 865 F.2d at 85.

In light of the distinctions drawn between *Cooper* and *Watts*, we conclude that Miss Lockhart's letter was a "true threat." There is nothing in its contents that signals it is intended to be a joke. Moreover, Miss Lockhart gave the letter to the Food Lion manager, whom she did not know before entering the store, in a serious manner without suggesting it was meant as jest.

Furthermore, although the letter contains political statements, the manner in which Miss Lockhart gave the letter to its recipients is different from a speech at a political rally. Nothing in Miss Lockhart's actions suggest she intended to engage in political discourse with the Food Lion management.

Finally, the threat is not conditional in the same manner as the threat in *Watts*. *Watts* involved a threat made "expressly conditional" on being drafted into the United States military. *Watts*, 394 U.S. at 708. Miss Lockhart's threat, while grammatically conditional—it begins with the phrase "[i]f George Bush refuses to see the truth and uphold the Constitution"—does not indicate what events or circumstances would prevent the threat from being carried out beyond the broad statement that the President must "see the truth" and "uphold the Constitution." Likewise, Miss Lockhart did not say or do anything upon giving the letter to the Food Lion manager that would indicate the threat was intended to be conditional. Thus, in the context in which it was delivered, the threat was not "expressly conditional" in nature as that term is described in *Watts*.

In sum, we do not believe this threat can be considered either legitimate political hyperbole or jest when examined in the context in which it was made, nor was it expressly conditional. The threat therefore constitutes a true threat not protected by the First Amendment.

### III.

For the reasons stated, we hold that Miss Lockhart's indictment was sufficient, her conviction supported by substantial evidence, and her threat a true threat not protected by the First Amendment.

Accordingly, the judgment of the district court is

*AFFIRMED.*