**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4651**

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

JOHNMARLO BALASTA NAPA,

            Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.   James C. Turk, Senior District Judge.   (7:08-cr-00030-jct-1)

Submitted:  February 25, 2010        Decided:  March 19, 2010

Before MICHAEL, KING, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Larry W. Shelton, Federal Public Defender, Fay F. Spence, First Assistant Federal Public Defender, Roanoke, Virginia, for Appellant.   Julia C. Dudley, United States Attorney, Craig J. Jacobsen, Assistant United States Attorney, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Johnmarlo B. Napa entered a conditional guilty plea, Fed. R. Crim. P. 11(a)(2), to willfully transmitting a threat to injure another person in violation of 18 U.S.C. § 875(c) (2006). The conditional plea preserved Napa's right to challenge the district court's denial of his motion to dismiss the indictment.

On appeal, Napa contends that the district court erred in rejecting his argument that the communications that formed the basis for the indictment do not fall within the parameters of § 875(c). Napa argues that the communications were not threats because they did not contain an expression of an intent to commit an unlawful act of violence to a particular person or group. As a result, he argues, the communications are protected by the First Amendment. Finding no error, we affirm.

Napa's indictment arose from an email message that he sent to two Virginia Tech students. The two students, H.H. and C.L., attended Virginia Tech on April 16, 2007, when Seung-Hui Cho killed thirty-two people.[*] H.H. and C.L. had been stalked by Cho and had received disturbing messages from him in the months prior to the shooting. After the shooting, H.H. and C.L. were interviewed about their prior interactions with Cho, and their

_____

[*] Because the victims did not testify in the proceedings below, and in light of Fed. R. Crim. P. 6(e), the Government has identified the two victims only as H.H. and C.L.

2

names and photographs appeared in several newspaper stories and on the internet.

Napa's email, which bore the return email address "SeungCho <seunghuichorevenge@yahoo.com>," was specifically directed to H.H. and C.L., and was sent from Nevada to their email addresses at Virginia Tech on the eve of the first anniversary of the Virginia Tech shooting. The message which is a quote from a videotape Cho sent to NBC News just prior to the mass shooting in Norris Hall, stated:

> You have never felt a single ounce of pain your whole life. Did you want to inject as much misery in our lives as you can just because you can? I didn't have to do this. I could have left. I could have fled. But No, I will no longer run. It's not for me. For my children, for my brothers and sisters that you fucked. I did it for them . . .

Napa included in the email message a hyperlink to a "My Space" internet web page that contained information about Cho, photographs of Cho with guns, a ballad glorifying Cho's acts, and photographs of both H.H. and C.L. that Napa found on the internet. Adjacent to a photo of Cho was the statement "Continue the Rampage." Among the pictures on Napa's My Space page was a photo that showed Cho holding cutout paper dolls on which the faces of H.H. and C.L. and Virginia Tech shooting victims had been pasted. There were also several individual photographs of H.H. and C.L. among the pictures on the My Space page.

3

When H.H. opened the message, she became hysterical and called the Blacksburg Police. She also called C.L. to warn her about the email. When C.L. opened the email, she became very frightened and feared for her safety because the person who had sent the email "could be anywhere." C.L. believed that the person who sent the message had researched the events surrounding the shooting at Virginia Tech, discovered who H.H. and C.L. were, found their photographs, and found their email addresses. Upon reading the email, C.L. immediately felt threatened.

After receiving H.H.'s call, the Blacksburg Police reported the incident to federal authorities. The email message was traced back to Napa, who ultimately admitted to sending the message.

We review de novo whether a written communication is constitutionally protected speech or "an unprotected 'true threat.'" United States v. Bly, 510 F.3d 453, 457 (4th Cir. 2007).

The transmission of threats in interstate commerce is prohibited by 18 U.S.C. § 875(c). To prove a violation of § 875(c), "the government must establish that the defendant intended to transmit the interstate communication and that the communication contained a true threat." United States v. Darby, 37 F.3d 1059, 1066 (4th Cir. 1994). The government need not

4

show that the speaker actually intended to carry out the threat. Darby, 37 F.3d at 1064 n.3 (a violation of 18 U.S.C. § 875(c) is not a specific intent crime and "the government need not prove intent (or ability) to carry out the threat").

In determining whether the communication contains a true threat, the communication must be viewed in the context in which it is received. See United States v. Spruill, 118 F.3d 221, 228 (4th Cir. 1997) (when considering whether a statement is a threat, "[c]ontext is important"). The communication must be viewed using an objective standard, - that is, whether "an ordinary, reasonable person who is familiar with the context of the communication would interpret it as a threat of injury." United States v. Spring, 305 F.3d 276, 280 (4th Cir. 2002) (internal quotation marks and alterations omitted); Darby, 37 F.3d at 1064.

In Watts v. United States, 394 U.S. 705 (1969), the Supreme Court identified four factors in determining that Watts's statement was not a true threat. The Court noted that the communication was: (1) made in jest; (2) to a public audience; (3) in political opposition to the President; and (4) conditioned upon an event the speaker himself vowed would never happen. Id. at 707-08. See also United States v. Lockhart, 382 F.3d 447, 451-52 (4th Cir. 2004) (applying these four factors

and finding that Lockhart's statement was a true threat upon the life of the President).

In applying these four factors to Napa's case, we find that the email he sent to H.H. and C.L. was a true threat. In so finding, we note first that any ordinary, reasonable person familiar with the context would have felt threatened by the message and would not have construed it as a joke. Second, unlike the statement made to the public in Watts, the statement here was specifically directed at H.H. and C.L. Third, the message was not constructed in a manner to engage H.H. and C.L. in the free trade of ideas regarding the Virginia Tech shooting or their specific interactions with the shooter. Finally, viewing the expression in the context in which it was received, Napa's statement on the My Space page "Continue the Rampage," taken with his return email address of seunghuichorevenge@yahoo.com, would indicate to an ordinary, reasonable person that Napa planned on avenging Cho's death by committing future violent acts, and the threat of such violence was imminent, and not conditional.

We accordingly conclude, the district court properly denied Napa's motion to dismiss the indictment, and affirm Napa's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the

6

materials before the court and argument would not aid the decisional process.

AFFIRMED