DUNCAN, Circuit Judge,
concurring:
I am pleased to join the excellent majority opinion in its entirety. I write separately for the purpose of emphasizing a few points I find particularly significant.
I begin with the foundational principle that “a panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court. Only the Supreme Court or this court sitting en banc can do that.” Mentavlos v. Anderson, 249 F.3d 301, 312 n. 4 (4th Cir.2001). Here, the dissent contends that Virginia v. Black, 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003), constitutes a “superseding contrary decision” that requires this circuit to reexamine our definition of a “true threat.” Post at 520. I cannot agree. As I explain below, Black is not contrary to, and therefore does not overrule, our prior precedent that directly addresses the issue presented. We do not lightly presume that the law of the circuit has been overturned. See United States v. Jeffery, 631 F.3d 669, 676-78 (4th Cir.2011) (adhering to our precedent when a subsequent Supreme Court decision did not directly overrule it); United States v. *517 Brooks, 524 F.3d 549, 559-60 (4th Cir.2008) (same). Such a presumption would be particularly inappropriate where, as here, the Supreme Court opinion and our precedent can be read harmoniously. Supporting my conclusion that Black did not overrule Darby is the fact that, in three published opinions issued after Black, we have considered whether an appellant’s communications were punishable as a true threat without imposing a specific intent requirement. United States v. Armel, 585 F.3d 182, 185 (4th Cir.2009); United States v. Bly, 510 F.3d 453, 458-59 (4th Cir.2007) (quoting Black); United States v. Lockhart, 382 F.3d 447, 451-52 (4th Cir.2004). That our court has not modified our general intent standard, despite having had at least three post-Biacfc opportunities to consider whether that case required reexamination of our precedent, indicates that Black did not overturn Darby or its progeny, nor did it create a new standard for true threats to be applied across the board. Therefore, in deciding this case, we are bound by our court’s prior holdings.
Even if that were not the case, however, I believe the dissent’s understanding of Black is demonstrably incorrect. By interpreting Black to require a showing that a person specifically intended to threaten a victim in every statute that punishes threatening communications, the dissent overlooks the fact that the Virginia statute at issue in that case explicitly made it unlawful to burn a cross “with the intent of intimidating any person or group of persons.” 538 U.S. at 348, 123 S.Ct. 1536. Thus, the Supreme Court’s statements that “ ‘[t]rue threats’ encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals” and that “[ijntimidation ... is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death” are properly read, in context, to be addressing a specific intent statute that requires, as an element of the offense, a specific intent to intimidate. The statute at issue here, 18 U.S.C. § 875(c), includes no such specific intent requirement.
As both the majority and the dissent recognize, most of our sister circuits have continued to analyze true threats as requiring only a showing of a general intent to communicate a message that objectively contains a true threat. The Ninth Circuit alone has held that “the subjective test set forth in Black must be read into all threat statutes that criminalize pure speech.” United States v. Bagdasarian, 652 F.3d 1113, 1117 (9th Cir.2011). The case in which the Ninth Circuit first announced its interpretation of Black, United States v. Cassel, 408 F.3d 622 (9th Cir.2005), however, like the dissent here, failed to recognize that the Supreme Court’s language explaining the meaning of a true threat and of intimidation was written in the context of a statute that included a specific intent element.* See id. at 631. The Supreme *518 Court gave no indication that it intended these definitions to apply outside the context of a specific intent statute — thus leaving our pre-Black jurisprudence, as we have implicitly recognized, untouched.
I conclude by addressing the dissent’s concern that declining to impose a specific intent requirement upon every statute punishing threatening language will result in speakers being held criminally liable for “violent and extreme rhetoric” that does not reach the level of a true threat. Post at 46. If anything, the facts of the case before us demonstrate the contrary. Indeed, based on instructions following our standard from United States v. Darby, 37 F.3d 1059 (4th Cir.1994), a jury acquitted appellant White of three counts charging him with violations of § 875(b) and (c)— despite the fact that most would find the messages contained in the charged communications to be “violent and extreme.” Moreover, the district court acquitted White of an additional count as a matter of law, finding that his exhortations that a Canadian civil rights lawyer should be killed were protected speech — and we affirm. Thus, this record presents no basis for the dissent’s fear that maintaining our current true threat standard will punish the undeserving.
For these reasons, I fully concur in the majority’s conclusion that, when the venom spewed by White reaches a level such that a reasonable recipient would perceive it to be a true threat, the First Amendment affords him no protection.

 Moreover, regardless of the Ninth Circuit's recent attempt to streamline its jurisprudence in Bagdasarian, its case law has not been consistent post-Black. See United States v. Sutcliffe, 505 F.3d 944, 961-62 (9th Cir.2007) (declining to hold that jury instructions outlining an objective test were erroneous "[g]iven our contradictory case law on this issue”); United States v. Romo, 413 F.3d 1044, 1051 n. 6 (9th Cir.2005) (stating that Cassel did not affect the objective analysis used to determine whether a threat directed toward the president constituted a true threat); see also United States v. Stewart, 420 F.3d 1007, 1018 (9th Cir.2005.) ("We are not fully convinced that Romo properly distinguished Cassel, or that Romo's continued use of the objective 'true *518 threat' definition is consistent with Black’s subjective 'true threat’ definition.”).