GAY–STRAIGHT ALLIANCE OF OK-
EECHOBEE HIGH SCHOOL, an un-
incorporated association and Yasmin
Gonzalez, through her parent and
next friend Frankie Michelle Gonza-
lez, Plaintiffs,

v.

SCHOOL BOARD OF OKEECHOBEE
COUNTY and Toni Wiersma, individ-
ually and in her official capacity as
principal of Okeechobee High School,
Defendants.

No. 06–14320–CIV.

United States District Court,
S.D. Florida.

March 13, 2007.

Randall C. Marshall, Robert F. Rosenwald, Jr., Miami, FL, for Plaintiffs.

David Charles Gibbs, III, Gibbs & Craze, Seminole, FL, for Defendants.

## ORDER DENYING WITH PREJUDICE IN PART AND DENYING AS MOOT IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT (DE # 10)

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss First Amended Complaint ["Motion to Dismiss"] (DE # 10). Plaintiffs filed a Response (DE # 17). Defendants filed a Reply (DE # 24). The Court held a hearing on the Motion to Dismiss on February 28, 2007.

UPON CONSIDERATION of the Motion, the hearing before the Court, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### I. BACKGROUND

Plaintiff GAY–STRAIGHT ALLIANCE OF OKEECHOBEE HIGH SCHOOL ("GSA") is an unincorporated, voluntary association of students who attend Okeechobee High School ("OHS"). (1st Am. Compl.¶ 6.) Plaintiff YASMIN GONZALEZ ("Gonzalez," and, together with GSA, "Plaintiffs") is a student at OHS in her senior year and the president of the GSA, who sues by her next friend and parent, Plaintiff FRANKIE MICHELLE GONZALEZ ("Michelle Gonzalez"). *Id.* ¶ 8. Defendant SCHOOL BOARD OF OKEECHOBEE COUNTY ("SBOC" or "Defendant") operates OHS and is a public entity subject to suit pursuant to Fla. Stat. § 1001.41(4). *Id.* ¶ 9. Defendant TONI WIERSMA ("Principal" or "Wiersma") is the principal of OHS and her approval is required for OHS recognition of the GSA. *Id.* ¶ 10. Plaintiffs sought official recognition of the GSA as an OHS school club and access to OHS on an equal basis with other student groups. *Id.* ¶ 13. Plaintiffs found a teacher to serve as faculty advisor and subsequently sought Wiersma's approval. *Id.* The GSA's originally stated purposes include, *inter alia* "promot[ion of] tolerance and equality among students, regardless of sexual orientation and/or gender identities through awareness building and education"; "[t]o create a safe respectful learning enviornment [sic] for all students"; and "[t]o work together with administration and other school clubs to end prejudice and harassment in school functions." *Id.*, Ex. A. Plaintiffs complied with all requirements, rules, and procedures to gain access and recognition for a club at OHS. *Id.* ¶ 14. Wiersma delayed making any decision concerning Plaintiffs' request for several weeks. *Id.* ¶ 16. Gonzalez and several other students then presented Wiersma with a document outlining the purposes of the GSA and later ratified a constitution for the GSA. *Id.* ¶¶ 17–18.

On October 12, 2006, Wiersma refused to grant recognition of the GSA and denied it access to OHS on an equal basis with other non-curricular school clubs. *Id.* ¶ 19. On October 19, 2006, Chris Stafford ("Stafford"), an attorney representing the GSA, wrote a detailed letter to Wiersma. *Id.* ¶ 20 & *Id.*, Ex. C. Wiersma replied to Stafford with a terse letter dated October 23, 2006, in which she claimed that OHS "do[es] not allow any clubs or organizations which are not related to the standard curriculum to organize or meet at [OHS]." *Id.* ¶ 21 & *Id.*, Ex. D. Dr. Patricia G. Cooper, Superintendent of SBOC and Tom Conley, School Board Attorney, were copied on the letter. OHS has permitted and continues to permit numerous non-curricular clubs to meet on school grounds during

non-instructional time and to use school facilities. *Id.* ¶ 25. Plaintiffs initiated this action and seek injunctive relief, a declaratory judgment, and nominal damages not to exceed twenty dollars ($20.00).[1] Defendants' Motion to Dismiss: 1) challenges Plaintiffs' standing under 42 U.S.C. § 1983 and the Equal Access Act, 20 U.S.C. § 4071; 2) asserts that Wiersma is not subject to suit under the Equal Access Act; 3) argue that Plaintiffs have not satisfied the specificity requirements for a Section 1983 claim articulated in *Monell v. New York City Dept. of Social Srvs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); and that Wiersma is entitled to qualified immunity.

At the hearing before the Court on February 28, 2007, Defendants' counsel represented that SBOC's position is the same as Wiersma's and that SBOC, as final policy-making authority, does not and would not allow the GSA access to OHS. Plaintiffs' counsel, after colloquy with the Court, voluntarily withdrew its claims in this case as to Wiersma, both in her individual and official capacities. Accordingly, this action proceeds against Defendant SBOC only.

## II. LEGAL STANDARD

### Standard of Review for Motions to Dismiss

 A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984). On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988). Further, the Court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citations omitted); *South Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 406 (11th Cir.1996). Specifically, "[i]t is a well-settled principle of law that a complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on *any* possible theory." *Bowers v. Hardwick*, 478 U.S. 186, 201–02, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (Blackmun, J., dissenting) (quotations omitted); *see Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action.

## III. ANALYSIS

### A. GSA Is Entitled to Bring a Claim Under 42 U.S.C. § 1983

Defendant argues that GSA, as an unincorporated association, is not a "person" entitled to bring a claim under 42 U.S.C. § 1983.[2] Defendant points the Court to a

---

1. Plaintiffs explicitly waived any claim to damages in excess of twenty dollars ($20.00) in Pl. Reply to Def. Resp. to Mot. to Strike Def. Demand for Jury Trial (DE # 15).

2. Section 1983 states:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such offi-

non-binding case in the United States Court of Appeals for the Tenth Circuit where that court applied *Monell*'s interpretation of Section 1983's term "person" to an unincorporated anti-abortion association and concluded that it did not have standing to sue as it did not meet that court's definition of "person." *Lippoldt v. Cole,* 468 F.3d 1204, 1213 (10th Cir.2006). The *Lippoldt* court, in a unique interpretation of *Monell,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611, *Ngiraingas v. Sanchez,* 495 U.S. 182, 110 S.Ct. 1737, 109 L.Ed.2d 163 (1990), and *Inyo Cty., Cal. v. Paiute–Shoshone Indians of the Bishop Colony,* 538 U.S. 701, 123 S.Ct. 1887, 155 L.Ed.2d 933 (2003), concluded that unincorporated associations do not satisfy a three prong test of: (1) the legislative history of Section 1983; (2) the general understanding in 1871 of the legal personality of unincorporated associations; and (3) the Dictionary Act of 1871. *Lippoldt,* 468 F.3d at 1213. Curiously, the *Lippoldt* court, in its analysis of the legislative history of the statute fails to note (unlike the Supreme Court in

*Monell* and *Ngiraingas*) that Section 1983's inception as the Civil Rights Act of 1871 (also known as the Ku Klux Klan Act of 1871) was in direct response to the terror wrought by the Ku Klux Klan and intended to provide a federal remedy and jurisdiction over that association against which the state authorities and courts were powerless. Further, in its analysis of the legislative history, the *Lippoldt* court fails to note two specific instances where the original drafting of the Ku Klux Klan Act of 1871 (later codified in amended fashion as 42 U.S.C. § 1985) implicates unincorporated associations of persons or groups of people as either potential plaintiffs or defendants under the Act.[3] In essence, the *Lippoldt* court takes the Supreme Court's analysis in *Monell* that led to a holding that expanded the class of potential defendants and uses that analysis to contract the class of potential plaintiffs.

■ The Court is persuaded instead by the holding of *Jund v. Town of Hempstead,* 941 F.2d 1271 (2d Cir.1991). The court in *Jund* looked to the U.S. Supreme

---

cer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

**3.** The two portions read, in relevant part:

That if *two or more persons* within any State or Territory of the United States shall conspire together to overthrow, or to put down, or to destroy by force the government of the United States, or to levy war against the United States, or to oppose by force the authority of the government of the United States, or by force, intimidation, or threat to prevent, hinder, or delay the execution of any law of the United States, or by force to seize, take, or possess any property of the United States contrary to the authority thereof, or by force, intimidation, or threat to prevent any person from accepting or holding any office or trust or place of confidence under the United States, or from discharging the duties thereof . . . .

Ku Klux Klan Act of 1871 § 2 (emphasis added) (codified as amended at 42 U.S.C. § 1985(2));

That in all cases where insurrection, domestic violence, unlawful combinations, or conspiracies in any State shall so obstruct or hinder the execution of the laws thereof, and of the United States, as to deprive *any portion or class of the people of such State of any of the rights, privileges, or immunities, or protection,* named in the constitution and secured by this act, and the constituted authorities of such State shall either be unable to protect, or shall, from any cause, fail in or refuse protection of the people in such rights, such facts shall be deemed a denial by such State of the equal protection of the laws to which they are entitled under the constitution of the United States: and in all such cases . . . .

*Id.* § 4 (codified as amended at 42 U.S.C. § 1985(3)) (emphasis added).

Court's holdings in *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982), *American Soc'y of Mech. Eng'rs v. Hydrolevel Corp.*, 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982), and *United Mine Workers v. Coronado Coal Co.*, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1922) that unincorporated associations may be held liable under a theory of authorization in the absence of membership ratification and extended that logic to Section 1983 claims. 941 F.2d at 1278–79. Utilizing the same "mirroring" logic as the *Lippoldt* court, those that are subject to liability under Section 1983 should also have standing as plaintiffs.[4] *See, e.g., Citizens Against Tax Waste v. Westerville City School Dist. Bd. of Ed.*, 985 F.2d 255 (6th Cir.1993) (addressing merits of claim brought by unincorporated association under Section 1983, even when all individual plaintiffs failed to appeal); *Barrett v. United States*, 689 F.2d 324, 333 (2d Cir.1982) ("Unions and unincorporated associations have also been found to possess standing to assert a Section 1983 claim.") (citing *Kennedy Park Homes Ass'n v. City of Lackawanna, N.Y.*, 436 F.2d 108 (2d Cir.1970), *cert. denied*, 401 U.S. 1010, 91 S.Ct. 1256, 28 L.Ed.2d 546 (1971)).

This view is buttressed by the fact that the National Association for the Advancement of Colored People ("NAACP") has been recognized as both subject to suit and with sufficient standing to sue under Section 1983. *See. e.g., Claiborne*, 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215; *N.A.A.C.P. v. Brackett*, 130 Fed.Appx. 648 (4th Cir.2005) (per curiam) (not selected for publication). The NAACP, an unincorporated association, is arguably *exactly* the type of plaintiff that the drafters of the Ku Klux Klan Act of 1871 had in mind. To hold that it (and other unincorporated associations) do not have standing to bring Section 1983 claims runs counter to the legislative history of the statute and would be contrary to public policy. Finally, for this Court to hold as Defendant suggests would (particularly in this case) create the puzzling result of an association seeking formal recognition and enforcement of its right to assemble only to be told by the federal courts that it cannot bring its claim because it is not formally recognized.

The proper analysis that the Court must undertake is whether the GSA satisfies the standards for associational standing. As the U.S. Court of Appeals for the Eleventh Circuit has stated, "an association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1170 (11th Cir.2006) (citations omit-

---

4. The court in *Lippoldt* stated:

> Although *Monell* dealt only with municipal *liability* under Section 1983, we have relied upon it to conclude that a municipality may also *bring suit* under Section 1983. *Rural Water Dist. No. 1, Ellsworth County, Kan. v. City of Wilson, Kan.*, 243 F.3d 1263, 1274 (10th Cir.2001) ("[I]n light of Monell, it would be a strained analysis to hold, as a matter of statutory construction, that a municipal corporation was a 'person' within one clause of section 1983, but not a 'person' within another clause of the same statute.") (quoting *South Macomb Disposal Auth. v. Township of Washington*, 790 F.2d 500, 503 (6th Cir.1986)). While there is no *per se* rule of statutory interpretation that identical words used in different parts of the same act are intended to have the same meaning, there is a presumption that this is so. *See United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 214, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001).

468 F.3d at 1212–13 (emphasis in original).

ted). Here, the GSA satisfies all three prongs as its members would have standing, these claims are germane to GSA's purpose, and the claims do not *require* the participation of individual members.

 Finally, a Plaintiff has standing under the Constitution when: "(1) the plaintiff has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable decision of the court." *Sierra Club v. Johnson,* 436 F.3d 1269, 1275 (11th Cir. 2006) (citing *Lujan v. Def. of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Plaintiffs' First Amended Complaint satisfies this test as both Gonzalez and GSA have allegedly suffered an injury in fact that is concrete, particularized, and actual, there is a causal connection between the alleged injury and the conduct of Defendant, and this injury would be redressed by a favorable decision of this Court.

## B. Plaintiffs' First Amended Complaint Adequately Pleads a Section 1983 Claim

 To adequately plead a Section 1983 claim, Plaintiffs must show that the alleged deprivation of civil rights was caused by some official policy. *Monell,* 436 U.S. at 690, 98 S.Ct. 2018. "Official policy" can be found through: 1) an express policy that, when followed, deprives a person of his or her constitutional or statutory rights; 2) a widespread practice that, though not authorized by an express policy or written law, is so permanent and well-settled as to constitute a custom or usage with the force of law; or 3) an allegation that the constitutional injury was caused by a person with final policy-making authority. *Id.* at 690–91, 98 S.Ct. 2018.

 Here, Plaintiffs have adequately pled Section 1983 claims against SBOC. The GSA was founded out of concern for student safety in the wake of several violent episodes against students that were allegedly tinged with overtones of animosity towards homosexuals. Plaintiffs have alleged, with factual specificity, that the GSA was formed to address these issues and that, per OHS policy, they approached Wiersma having satisfied what they knew to be the requirements for school recognition of a club, and that she rejected Plaintiffs' request. The response given Plaintiffs by Wiersma, both in person and via letter to their counsel, was that OHS "do[es] not allow any clubs or organizations which are not related to standard curriculum to organize or meet at [OHS]." (1st Am.Compl., Ex. D.) Finally, as the representation of Defendant's counsel demonstrated to the Court that SBOC's position (as final policy-making authority) is the same as Wiersma's, the Court finds that Plaintiffs satisfy the third prong under *Monell,* 436 U.S. at 691, 98 S.Ct. 2018.

## IV. CONCLUSION

For the reasons set forth above, it is

ORDERED AND ADJUDGED that Defendant's Motion to Dismiss (DE # 10) is DENIED WITH PREJUDICE IN PART and DENIED AS MOOT IN PART, as follows:

1. To the extent that Defendant seeks to have Plaintiffs' First Amended Complaint against Defendant SCHOOL BOARD OF OKEECHOBEE COUNTY dismissed, the Motion is DENIED WITH PREJUDICE.

2. To the extent that Defendant TONI WIERSMA seeks to be dismissed as a party under an assertion of qualified immunity or other theory, the Motion is DENIED AS MOOT in light of Plaintiffs' counsel's voluntary withdrawal of its

claims against Defendant TONI WIERS-MA at the hearing before the Court on February 28, 2007. Accordingly,

1. Defendant TONI WIERSMA is DISMISSED from this action.

2. Plaintiffs' First Amended Complaint will proceed against Defendant SCHOOL BOARD OF OKEECHOBEE COUNTY.

3. The Court will address Plaintiffs' Motion for Temporary Injunction (DE # 12) in due course.