**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHEMEHUEVI INDIAN TRIBE, on its own behalf and on behalf of its members parens patriae; CHELSEA LYNN BUNIM; TOMMIE ROBERT OCHOA; JASMINE SANSOUCIE; NAOMI LOPEZ, *Plaintiffs-Appellants*, v. JOHN MCMAHON, in his official capacity as Sheriff of San Bernardino County; RONALD SINDELAR, in his official capacity as deputy sheriff for San Bernardino County, *Defendants-Appellees.* | No. 17-56791 D.C. No. 5:15-cv-01538-DMG-FFM OPINION |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted May 13, 2019
Pasadena, California

Filed August 19, 2019

Before:  Kim McLane Wardlaw and Andrew D. Hurwitz, Circuit Judges, and Edward R. Korman,[*] District Judge.

Opinion by Judge Hurwitz

---

## SUMMARY[**]

### Civil Rights/Indian Country

The panel affirmed in part and vacated in part the district court's dismissal of a complaint and remanded in an action brought pursuant to 42 U.S.C. § 1983 by the Chemehuevi Indian Tribe and four of its enrolled members alleging violations of various federal statutory and constitutional rights in connection with citations by San Bernardino County Sheriff's Deputies of four Tribe members for violating California regulatory traffic laws.

The panel first analyzed the history and establishment of the Chemehuevi Reservation and concluded that the area where the Tribe members were cited was within the boundaries of the Reservation and hence was "Indian country" under 18 U.S.C. § 1151(a).  Accordingly, the panel held that San Bernardino County did not have jurisdiction to enforce California regulatory traffic laws within that area.

---

[*] The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that the individual plaintiffs, but not the Tribe, could challenge the citations under § 1983. The panel held that because § 1983 was designed to secure private rights against government encroachment, tribal members could use it to vindicate their individual rights, but not the tribe's communal rights. The panel therefore vacated the district court's judgment dismissing the complaint as to the individuals, but affirmed the judgment as to the Tribe.

## COUNSEL

Lester John Marston (argued), Rapport and Marston, Ukiah, California, for Plaintiffs-Appellants.

Shaun M. Murphy (argued) and Katelyn K. Empey, Slovak Baron Empey Murphy & Pinkey LLP, Palm Springs, California; Michelle Blakemore and Miles Kowalski, San Bernardino County Counsel, San Bernardino, California; for Defendants-Appellees.

## OPINION

HURWITZ, Circuit Judge:

In 2015, San Bernardino County Sheriff's Deputies cited four enrolled members of the Chemehuevi Indian Tribe for violating California regulatory traffic laws. Two of the Tribe's members were cited on Section 36 of Township 5 North, Range 24 East ("Section 36"), a one square mile plot the Tribe claims is part of its Reservation; two were cited elsewhere on the Reservation.

It is undisputed that the Sheriff cannot enforce regulatory traffic laws in "Indian country." *See* 18 U.S.C. § 1162; 28 U.S.C. § 1360. "Indian country" includes, but is not limited to, land within the boundaries of a reservation. 18 U.S.C. § 1151. The issues for decision today are (1) whether the individual Tribe members and the Tribe can challenge the citations through a 42 U.S.C. § 1983 action; and, if so, (2) whether Section 36 is Indian country. We hold that the individual plaintiffs, but not the Tribe, can challenge the citations under § 1983. And, we conclude that all the citations occurred within Indian country. We therefore vacate the district court's judgment dismissing the complaint as to the individuals but affirm the judgment as to the Tribe.

## I.  Background.

### A.  Facts.

Chelsea Lynn Bunim, Jasmine Sansoucie, Tommie Robert Ochoa, and Naomi Lopez are enrolled members of the Chemehuevi Tribe. Each was stopped and cited by a San Bernardino County Sheriff's Deputy for violating a California regulatory traffic law. Deputy Sheriff Ronald Sindelar stopped and cited Bunim on Section 36 for driving without a valid registration. Sindelar impounded Bunim's car, leaving her alone on the roadside. Deputy Sindelar also stopped Sansoucie on Section 36, citing her for driving with a suspended license.

Deputy Sindelar cited Ochoa for driving without a valid registration and failing to provide evidence of financial responsibility. Sindelar had Ochoa's car towed, leaving him alone on the roadside. Deputy Sheriff J. Wagner cited Lopez for driving without a valid registration. Both of these citations were issued at locations that the parties agree are inside the boundaries of the Chemehuevi Reservation.

Bunim, Sansoucie, Ochoa, Lopez, and the Tribe sued the Sheriff and the Deputies under 42 U.S.C. § 1983, alleging violations of various federal statutory and constitutional rights. The complaint sought monetary damages, a declaratory judgment, and injunctive relief. The defendants argued that none of the plaintiffs' claims was cognizable under § 1983. In addition, in response to the claims raised by Bunim and Sansoucie, the defendants argued that Section 36 was outside the Reservation boundaries, and therefore within the County's regulatory jurisdiction.

## B.  Procedural History.

The district court initially entered a preliminary injunction prohibiting the defendants from "citing, arresting, impounding the vehicles of, and prosecuting Chemehuevi tribal members for on-reservation violations" of California regulatory vehicle laws, including violations occurring on Section 36. The court determined there were "at least serious questions going to the merits" of whether Section 36 was "Indian country."

But, the court later granted summary judgment to the defendants, concluding that Section 36 was not part of the Chemehuevi Reservation and therefore not Indian country under 18 U.S.C. § 1151(a). In a motion to amend the judgment, Ochoa and Lopez noted that they were not ticketed in Section 36. The district court denied the motion, holding that even if the plaintiffs were cited on the Reservation, they failed to allege "a well-established constitutional violation for purposes of their section 1983 claim." The court reasoned that § 1983 "is concerned with the relationship between individuals and the state, not the distribution of power between state, federal, or tribal governments," and therefore neither the "right to be free of

state regulation" nor "the right to tribal government" is "within the scope of section 1983."[1]

The Tribe and the individual plaintiffs timely appealed. We have jurisdiction of that appeal under 28 U.S.C. § 1291 and review the summary judgment de novo. *Parravano v. Babbitt*, 70 F.3d 539, 543 (9th Cir. 1995).

## II.  Discussion.

## A.  Is Section 36 Indian Country?

We turn first to the question whether Section 36 is in the Chemehuevi Reservation, and thus Indian country under 18 U.S.C. § 1151(a).  But it is important also to note at the outset what issues are not before us.  We need not—and do not—decide today who holds title to Section 36.  Indian country includes "all land within the limits of any Indian reservation . . . notwithstanding the issuance of any patent." 18 U.S.C. § 1151(a).  "[A]djudicating reservation boundaries is conceptually quite distinct from adjudicating title to the same lands.  One inquiry does not necessarily have anything in common with the other, as title and reservation status are not congruent concepts in Indian law." *Navajo Tribe of Indians v. New Mexico*, 809 F.2d 1455, 1475 (10th Cir. 1987) (internal quotation marks and footnote omitted); *see Solem v. Bartlett*, 465 U.S. 463, 466–68 (1984).

---

[1] The complaint also alleged that the citations "constitute[d] racial discrimination in direct violation" of the Equal Protection Clause.  The district court held that "the specter of racial animus" was not "sufficient to create a triable issue of fact that Defendants violated" the Fourteenth Amendment.  The plaintiffs do not challenge that ruling on appeal.

Our inquiry as to the reservation status of Section 36 begins in 1853. After California gained statehood, Congress ordered a survey of its public lands and granted the State title to sections 16 and 36 of each township.[2] Act of March 3, 1853, ch. 145, 10 Stat. 244, 245–46. But, the 1853 Act specifically excluded from that grant any land "in the occupation or possession of any Indian tribe." *Id.* at 246–47. The Surveyor General approved a survey of the land at issue in this case in 1895.

While that survey was being conducted, Congress ordered the Secretary of the Interior "to select a reservation" for each California Mission Indian tribe. Mission Indian Relief Act, ch. 65, 26 Stat. 712, 712 (1891). The reservations were to "include, as far as practicable, the lands and villages which have been in the actual occupation and possession of said Indians." *Id.* Although the Secretary was also instructed to "cause a patent to issue for each" reservation, and thus transfer title to the land to the United States as trustee for the tribes, the Act provided that the reservations would be "valid when approved by the [Executive Branch]." *Id.* In 1905, Congress authorized the Secretary "to investigate through an inspector . . . existing conditions of the California Indians and to report to Congress at the next session some plan to improve the same." Act of March 3, 1905, ch. 1479, 33 Stat. 1048, 1058.

Special Agent C.E. Kelsey was then dispatched to visit the Chemehuevi Tribe and identify territory for a reservation. In 1907, Kelsey issued a report to the

---

[2] *See* U.S. Geological Survey, *The Public Land Survey System*, The National Map Small Scale (Jan. 18, 2018), https://nationalmap.gov/small_scale/a_plss.html (explaining township, range, and section designations).

Commissioner of Indian Affairs, identifying land to be included in the reservation. He specifically recommended that the reservation include the eastern half of Township 5 North, Range 24 East ("E. 1/2 of T. 5 N., R. 24 E.")—which contains Section 36. Kelsey noted that this land was the "present location" of the tribal members and that "there is no question but they have occupied this land since primeval times." The Commissioner forwarded Kelsey's recommendation to the Secretary of the Interior.

In an executive order (the "1907 Order"), the Secretary then "direct[ed] that the lands referred to" by Kelsey and the Commissioner "be withdrawn from all form of settlement," and created the Chemehuevi Reservation. The Secretary also asked Congress "to authorize the addition of certain lands to the Mission Indian Reservations." Although Congress did not act upon this proposed legislation, it subsequently recognized the existence of the Chemehuevi Reservation in the Parker Dam Act, ch. 522, 54 Stat. 744 (1940).

It is clear that a Chemehuevi Reservation was validly established by the Secretary's 1907 Order, notwithstanding the absence of subsequent Congressional approval. Indeed, the Supreme Court has expressly so recognized:

> Congress and the Executive have ever since recognized these as Indian Reservations. . . . They have been uniformly and universally treated as reservations by map makers, surveyors, and the public. We can give but short shrift at this late date to the argument that the reservations . . . are invalid because they were originally set apart by the Executive.

*Arizona v. California*, 373 U.S. 546, 598 (1963); *see also id.* at 596 & n.100.**[3]**

The defendants argue that the 1907 Order was invalid *ab initio* because Section 36 had already been deeded to California. The factual premise of that argument, however, is subject to question. The 1853 Act excluded any land "in the occupation or possession of any Indian tribe," 10 Stat. at 246–47, and the Kelsey survey, adopted by the Secretary, documents that Section 36 falls in that exception. The district court erred in excluding the Kelsey report as hearsay. It is plainly admissible as an ancient document, Fed. R. Evid. 803(16), which may contain multiple levels of hearsay. 30B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 6935 (2018 ed.) ("[E]xclusion of statements in qualifying ancient documents on the grounds that the author lacked firsthand knowledge, or (relatedly) that the document contains hearsay-within-hearsay should be rare."). Review of historical documents is typical— indeed often necessary—in cases involving the boundaries of Indian reservations. *See, e.g.*, *Idaho v. United States*, 533 U.S. 262, 265–71 (2001).

But, as noted, we need not today decide the extent of the 1853 land grant. "[E]xecutive orders must be liberally construed in favor of establishing Indian rights," *Confederated Tribes of Chehalis Indian Reservation v.*

---

**[3]** The defendants cite *Arizona v. California*, 460 U.S. 605, 636 n.26 (1983), for the proposition that "the secretarial orders do not constitute 'final determinations.'" But, "the secretarial orders" at issue in that litigation were issued in the 1960s and 1970s. *See id.* at 631–32. In 1919 and 1927, Congress "prohibited future changes in Indian reservations by executive order." *United States v. S. Pac. Transp. Co.*, 543 F.2d 676, 686 & n.15 (9th Cir. 1976). That prohibition plainly does not affect the 1907 Order.

*Washington*, 96 F.3d 334, 340 (9th Cir. 1996), and are "interpreted as the Indians would have understood them," *Parravano*, 70 F.3d at 544. Given the language of the 1853 Act, the Kelsey report identifying Section 36 as land occupied historically by Indians, and the express inclusion of Section 36 in the 1907 Order, the Chemehuevi Tribe (and indeed, the Secretary of the Interior) surely understood Section 36 to be within the Reservation.

Nor can we conclude that the boundaries of the Reservation as established in the 1907 Order were later diminished. "We do not lightly infer diminishment of reservations." *Confederated Tribes of Chehalis*, 96 F.3d at 343–44. After 1927, Congress prohibited any change to the boundaries of existing executive-order reservations except by Congressional act. Act of March 3, 1927, ch. 299, § 4, 44 Stat. 1347 (codified at 25 U.S.C. § 398d); *see S. Pac. Transp.*, 543 F.2d at 686 & n.15. There is no such act removing Section 36 from the Chemehuevi Reservation.

The defendants also rely on a patent issued to the Tribe by the Bureau of Land Management in 2010, which excluded "[t]hose lands granted to the State of California . . . on July 10, 1895"—the date on which the government survey was finalized—"located in . . . sec. 36, T. 5 N., R. 24 E." But, as noted above, we do not today adjudicate title. More importantly, because the 2010 patent was issued over a century after the Reservation was established, it provides no evidence of the intent of the Executive or the understanding of the Tribe in 1907. Nor can it, nor does it purport to, diminish the Chemehuevi Reservation. The patent cites the 1907 Order, then grants *some* of the land covered by that order to the Tribe in trust—an issue of ownership. It is silent as to the reservation status of any land excluded from the patent.

We therefore conclude that Section 36 is within the Chemehuevi Reservation and hence "Indian country" under 18 U.S.C. § 1151(a).

## B.  Can the Plaintiffs Sue Under § 1983?

California cannot enforce state law that regulates—but does not prohibit—tribal members' conduct inside a reservation. *Confederated Tribes of Colville Reservation v. Washington*, 938 F.2d 146, 147 (9th Cir. 1991) (citing 18 U.S.C. § 1162; 28 U.S.C. § 1360).   The defendants concede that the citations at issue involved regulatory laws and therefore could not be issued against enrolled members of the Tribe within the boundaries of the Reservation. *See id.* at 148.  But, they argue that even such citations cannot be the subject of a § 1983 action.

We disagree.  Section 1983 allows any "person" to sue for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws."   42 U.S.C. § 1983. Because § 1983 "was designed to secure private rights against government encroachment," *Inyo Cty. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701, 712 (2003), tribal members can use it to vindicate their "individual rights," but not the tribe's "communal rights," *Skokomish Indian Tribe v. United States*, 410 F.3d 506, 515–16 (9th Cir. 2005) (en banc).  And, "traditional section 1983 suit[s]"—for example, those challenging an arrest on tribal land—seek to vindicate an "individual right."  *See id.* at 516 n.8 (citing *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 n.5 (9th Cir. 1991)).

Bunim, Sansoucie, Ochoa, and Lopez's claims are "traditional" § 1983 suits.  Each was stopped and detained by a San Bernardino County Deputy; some had their vehicles seized.   They contend that their detentions and citations

violated the Constitution and federal statutes.  They have a cause of action under § 1983 against the defendants.

The Tribe, however, does not have a § 1983 claim.  An Indian tribe "may not sue under § 1983 to vindicate" a "sovereign right," such as its right to be free of state regulation and control.  *Inyo Cty.*, 538 U.S. at 712.  Nor can the Tribe assert its members' individual rights as *parens patriae* in a § 1983 action.   To assert *parens patriae* standing, the Tribe would have to "articulate an interest apart from the interests of particular private parties," i.e., "be more than a nominal party," and "express a quasi-sovereign interest."  *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 651 (9th Cir. 2017).  That requirement is inconsistent with a § 1983 action: quasi-sovereign interests are not individual rights.

### III.  Conclusion.

The Chemehuevi Reservation, as established by the 1907 Order, includes Section 36.  Section 36 is therefore Indian country, and San Bernardino County does not have jurisdiction to enforce California regulatory laws within it. The individual plaintiffs may bring § 1983 claims against the defendants.  The Tribe, however, cannot assert its sovereign rights under that statute.[4]

**AFFIRMED in part, VACATED and REMANDED in part.  Each party shall bear its own costs.**

---

[4] We take no position on any defenses, including immunity, the defendants might have to the claims raised by the individuals.