538 U.S. 1 (2003)
 INYO COUNTY, CALIFORNIA, ET AL., PETITIONERS
v.
PAIUTE-SHOSHONE INDIANS OF THE BISHOP COMMUNITY OF THE BISHOP COLONY ET AL.
 No. 02-281.
 Supreme Court of United States.
 Argued March 31, 2003.
 Decided May 19, 2003.
 
 CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT.
 ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT.
 The Bishop Paiute Tribe in California chartered and wholly owns the Bishop Paiute Gaming Corporation, which operates and manages the Paiute Palace Casino (Casino), a tribal gaming operation. When the Inyo County District Attorney asked the Casino for the employment records of three Casino employees under investigation for welfare fraud, the Tribe responded that its privacy policy precluded release of the records without the employees' consent. The District Attorney, on showing probable cause, then obtained and executed a search warrant authorizing a search of the Casino for payroll records of the three employees. The District Attorney subsequently asked for the records of six other Casino employees. The Tribe reiterated its privacy policy, but offered to accept as evidence of consent a redacted copy of the last page of each employee's signed welfare application. The District Attorney refused the offer. To ward off any additional searches, the Tribe and its Gaming Corporation filed suit in Federal District Court against the District Attorney and the Sheriff, in their individual and official capacities, and the County. Asserting federalquestion jurisdiction under 28 U. S. C. §§1331, 1337, 1343(i)(3)(4), and the federal common law of Indian affairs, the Tribe sought injunctive and declaratory relief to vindicate its status as a sovereign immune from state processes under federal law, and to establish that state law was preempted to the extent that it purported to authorize seizure of tribal records. The Tribe also sought relief under 42 U. S. C. §1983, including compensatory damages, alleging that the defendants violated the Tribe's and Gaming Corporation's Fourth and Fourteenth Amendment rights and the Tribe's right to selfgovernment. The District Court, on defendants' motion, dismissed the Tribe's complaint, holding, inter alia, that tribal sovereign immunity did not categorically preclude the search and seizure of the Casino's personnel records. The Ninth Circuit reversed, holding that execution of a search warrant against the Tribe interfered with "the right of reservation Indians to make their own laws and be ruled by them." Williams v. Lee, 358 U. S. 217, 220 (1959). Acknowledging a prior decision in which it held that the right to tribal self-government is not protected by §1983, the court concluded that, in this case, a §1983 claim could be maintained because the Tribe sought protection from an unlawful search and seizure, a right secured by the Fourth Amendment and therefore within §1983's compass.
 
 Held:
 
 1. The Tribe may not sue under §1983 to vindicate the sovereign right it here claims. Section 1983 permits "citizen[s]" and "other person[ s] within the jurisdiction" of the United States to seek legal and equitable relief from "person[s]" who, under color of state law, deprive them of federally protected rights. Although this case does not squarely present the question, the Court assumes that tribes, like States, are not subject to suit under §1983. See Michigan Dept. of State v. Will, 491 U. S. 58. The issue pivotal here is whether a tribe qualifies as a claimant—a "person within the jurisdiction" of the United States—under §1983. Qualification of a sovereign as a "person" who may maintain a particular claim for relief depends not "upon a bare analysis of the word `person,'" Pfizer Inc. v. Government of India, 434 U. S. 308, 317, but on the "legislative environment" in which the word appears, Georgia v. Evans, 316 U. S. 159, 161. There is in this case no allegation that the County lacked probable cause or that the warrant was otherwise defective. It is only by virtue of the Tribe's asserted "sovereign" status that it claims immunity from the County's processes. Section 1983 was designed to secure private rights against government encroachment, see Will, 491 U. S., at 66, not to advance a sovereign's prerogative to withhold evidence relevant to a criminal investigation. For example, a tribal member complaining of a Fourth Amendment violation would be a "person" qualified to sue under §1983. But, like other persons, that member would have no immunity from an appropriately executed search warrant based on probable cause. The Tribe, accordingly, may not sue under §1983 to vindicate the sovereign right it here claims. Pp. 6-10.
 2. The Tribe has not explained, and the trial and appellate courts have not clearly decided, what prescription of federal common law, if any, enables the Tribe to maintain an action for declaratory and injunctive relief establishing its sovereign right to be free from state criminal processes. This case is therefore remanded for focused consideration and resolution of that jurisdictional question. P. 10.
 291 F. 3d 549, vacated and remanded.
 GINSBURG, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, KENNEDY, SOUTER, THOMAS, and BREYER, JJ., joined. STEVENS, J., filed an opinion concurring in the judgment.
 JUSTICE GINSBURG delivered the opinion of the Court.
 
 
 1
 This case stems from a California county's investigation of Native American tribe members for alleged offreservation crimes. Pursuing the investigation, county law-enforcement officers executed a state court warrant for casino employment records kept by the Tribe on its reservation. The Tribe sued the County, the District Attorney, and the Sheriff in federal court, asserting sovereign immunity from state court processes and seeking declaratory, injunctive, and monetary relief.
 
 
 2
 The parties and, as amicus curiae, the United States agree that a Native American Tribe, like a State of the United States, is not a "person" subject to suit under 42 U. S. C. §1983. We hold that, in the situation here presented, the Tribe does not qualify as a "person" who may sue under §1983. Whether the Tribe's suit qualifies for federal-court jurisdiction because it arises under some federal law other than §1983 is an issue the parties have not precisely addressed, and the trial and appellate courts have not clearly decided. We therefore remand the case for close consideration and specific resolution of that threshold question.
 
 
 3
 * The Bishop Paiute Tribe is a federally recognized tribe located on the Bishop Paiute Reservation in California. The Bishop Paiute Gaming Corporation, chartered and wholly owned by the Tribe, operates and manages the Paiute Palace Casino, a tribal gaming operation run under the Indian Gaming Regulatory Act, 102 Stat. 2467, 25 U. S. C. §2701 et seq.
 
 
 4
 In March 1999, the Inyo County Department of Health and Human Services received information from the State Department of Social Services indicating that three Casino employees had failed to report Casino earnings on their applications for state welfare benefits. Brief for Petitioners 4-5. According to the County, the employees failed to respond when the Department requested that they reconcile the apparent discrepancies between their Casino earnings and their welfare application forms. Id., at 5. The Department then forwarded the matter to the Inyo County District Attorney's Office, which, in turn, asked the employees to reconcile the apparent discrepancies. Id., at 6. That request, the County asserts, was also ignored. Ibid.
 
 
 5
 In February 2000, the District Attorney's Office asked the Casino for the three employees' employment records, explaining that it was investigating "alleged welfare fraud." 291 F. 3d 549, 554 (CA9 2002). The Tribe responded that its privacy policy precluded release of the records without the employees' consent.
 
 
 6
 The District Attorney then sought and, on showing probable cause, obtained a search warrant from the Inyo County Superior Court. The warrant authorized a search of the Casino for payroll records of the three employees. On March 23, 2000, the Inyo County Sheriff and the District Attorney executed the warrant. They did so over the objection of tribal officials. Those officials urged that the state court lacked jurisdiction to authorize a search of premises and seizure of records belonging to a sovereign tribe.[1] The Sheriff and the District Attorney, lacking cooperation from the Tribe, cut the locks off the storage facility containing the Casino's personnel records. The county officials seized timecard entries, payroll registers, and payroll check registers relating to the three employees; the seizure also garnered information contained in quarterly wage and withholding reports the Corporation had submitted to the State. Each item seized contained at least one reference to an employee under investigation.
 
 
 7
 In July 2000, the District Attorney's Office asked the Tribe for the personnel records of six other Casino employees. The Tribe reiterated its privacy policy, but offered to accept as evidence of consent a redacted copy of the last page of each employee's signed welfare application. That page contained a statement that employment records of individuals applying for public assistance were subject to review by county officials. The District Attorney refused the offer.[2]
 
 
 8
 To ward off any additional searches, the Tribe and the Corporation filed suit in Federal District Court naming as defendants the District Attorney and the Sheriff in their individual and official capacities, and the County. Asserting federal question jurisdiction under 28 U. S. C. §§1331, 1337, 1343(i)(3)(4), and the "federal common law of Indian affairs," the Tribe sought injunctive and declaratory relief to vindicate its status as a sovereign immune from state processes under federal law, and to establish that state law was preempted to the extent that it purported to authorize seizure of tribal records. App. 97, ¶1, 105-114, ¶¶26-53. The Tribe's complaint also sought relief under 42 U. S. C. §1983, including compensatory damages. In this regard, the Tribe alleged that by acting beyond the scope of their jurisdiction and "without authorization of law" in executing the warrant,[3] the defendants violated the Tribe's and Corporation's Fourth and Fourteenth Amendments rights, and the Tribe's right to self-government. App. 109, ¶38; see id., at 108-110, ¶¶33-39.
 
 
 9
 On November 22, 2000, the District Court, on defendants' motion, dismissed the Tribe's complaint. Tribal sovereign immunity, the court held, did not categorically preclude the search and seizure of the Casino's personnel records. Taking into account the competing interests of the State and the Tribe, the court concluded that, "[i]n the interest of a fair and uniform application of California's criminal law, state officials should be able to execute search warrant[s] against the tribe and tribal property." App. to Pet. for Cert. 62a. The court also held that the District Attorney and the Sheriff had qualified immunity from suit in their individual capacities. Id., at 57a-58a.
 
 
 10
 The Court of Appeals for the Ninth Circuit reversed the District Court's judgment dismissing the action. "[E]xecution of a search warrant against the Tribe," the Court of Appeals said, "interferes with `the right of reservation Indians to make their own laws and be ruled by them.'" 291 F. 3d, at 558 (quoting Williams v. Lee, 358 U. S. 217, 220 (1959)). In the appellate court's view, the District Court should not have "balanced the interests at stake" to determine whether the warrant was enforceable. 291 F. 3d, at 559. This Court's precedent, the Ninth Circuit said, advanced "a more categorical approach denying state jurisdiction . . . over a tribe absent a waiver by the tribe or a clear grant of authority by Congress." Ibid. (citing Oklahoma Tax Comm'n v. Chickasaw Nation, 515 U. S. 450, 458 (1995)).
 
 
 11
 "[E]ven if a balancing test is the appropriate legal framework," the Court of Appeals added, "the balance of interests favors a ruling for the Tribe." 291 F. 3d, at 559. The Tribe's privacy policies regarding employee records "promote tribal [self-government] interests," the Ninth Circuit reasoned; notably, those policies fostered "a trusting relationship with tribal members," and "affect[ed] the Casino, the Tribe's predominant source of economic development revenue." Ibid. The appeals court recognized the State's countervailing "interest in investigating potential welfare fraud," but thought it incumbent upon the State to further that interest "through far less intrusive means." Ibid.
 
 
 12
 The Court of Appeals also ruled that the District Attorney and the Sheriff were not shielded by qualified immunity. "[A] reasonable county officer," it held, "would have known . . . that seizing tribal property held on tribal land violated the Fourth Amendment because the property and land were outside the officer's jurisdiction." Id., at 568. The appeals court acknowledged prior Ninth Circuit precedent holding that the right to tribal self-government is not protected by §1983. Id., at 568, n. 7 (citing Hoopa Valley Tribe v. Nevins, 881 F. 2d 657 (1989)); see Brief for United States as Amicus Curiae 29, n. 15. But in this case, the Court of Appeals concluded, a §1983 claim could be maintained because the Tribe sought "protection from an unlawful search and seizure," a right secured by the Fourth Amendment and therefore within §1983's compass. 291 F. 3d, at 568, and n. 7. On December 2, 2002, we granted certiorari. 537 U. S. 1043 (2002).
 
 II
 
 13
 Central to our review is the question whether the Tribe's complaint is actionable under §1983. That provision permits "citizen[s]" and "other person[s] within the jurisdiction" of the United States to seek legal and equitable relief from "person[s]" who, under color of state law, deprive them of federally protected rights.[4] In Will v. Michigan Dept. of State Police, 491 U. S. 58 (1989), this Court held that a State is not a "person" amenable to suit under §1983. "[I]n enacting §1983," the Court said, "Congress did not intend to override well-established immunities or defenses under the common law," including "[t]he doctrine of sovereign immunity." Id., at 67. Although this case does not squarely present the question, the parties agree, and we will assume for purposes of this opinion, that Native American tribes, like States of the Union, are not subject to suit under §1983. See Brief for Petitioners 35-38; Tr. of Oral Arg. 49; Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc., 523 U. S. 751, 754 (1998) ("an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity").
 
 
 14
 The issue pivotal here is whether a tribe qualifies as a claimant—a "person within the jurisdiction" of the United States—under §1983.[5] The United States maintains it does not, invoking the Court's "longstanding interpretive presumption that `person' does not include the sovereign," a presumption that "may be disregarded only upon some affirmative showing of statutory intent to the contrary." Brief for United States as Amicus Curiae 7-8 (quoting Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U. S. 765, 780-781 (2000)); see Will, 491 U. S., at 64. Nothing in the text, purpose, or history of §1983, the Government contends, overcomes the interpretive presumption that "`person' does not include the sovereign." Brief for United States as Amicus Curiae 7-8 (some internal quotation marks omitted). Furthermore, the Government urges, given the Court's decision that "person" excludes sovereigns as defendants under §1983, it would be anomalous for the Court to give the same word a different meaning when it appears later in the same sentence. Id., at 8; see Brown v. Gardner, 513 U. S. 115, 118 (1994) (the "presumption that a given term is used to mean the same thing throughout a statute" is "surely at its most vigorous when a term is repeated within a given sentence"); cf. Lafayette v. Louisiana Power & Light Co., 435 U. S. 389, 397 (1978) (because municipalities are "persons" entitled to sue under the antitrust laws, they are also, in principle, "persons" capable of being sued under those laws).
 
 
 15
 The Tribe responds that Congress intended §1983 "to provide a powerful civil remedy `against all forms of official violation of federally protected rights.'" Brief for Respondents 45 (quoting Monell v. New York City Dept. of Social Servs., 436 U. S. 658, 700-701 (1978)). To achieve that remedial purpose, the Tribe maintains, §1983 should be "broadly construed." Brief for Respondents 45 (citing Monell, 436 U. S., at 684-685) (internal quotation marks omitted). Indian tribes, the Tribe here asserts, "have been especially vulnerable to infringement of their federally protected rights by states." Brief for Respondents 42 (citing, inter alia, The Kansas Indians, 5 Wall. 737 (1867) (state taxation of tribal lands); Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U. S. 172 (1999) (state infringement on tribal rights to hunt, fish, and gather on ceded lands); Mississippi Band of Choctaw Indians v. Holyfield, 490 U. S. 30 (1989) (tribal jurisdiction over Indian child custody proceedings); California v. Cabazon Band of Mission Indians, 480 U. S. 202 (1987) (state attempt to regulate gambling on tribal land)). To guard against such infringements, the Tribe contends, the Court should read §1983 to encompass suits brought by Indian tribes.
 
 
 16
 As we have recognized in other contexts, qualification of a sovereign as a "person" who may maintain a particular claim for relief depends not "upon a bare analysis of the word `person,'" Pfizer Inc. v. Government of India, 434 U. S. 308, 317 (1978), but on the "legislative environment" in which the word appears, Georgia v. Evans, 316 U. S. 159, 161 (1942). Thus, in Georgia, the Court held that a State, as purchaser of asphalt shipped in interstate commerce, qualified as a "person" entitled to seek redress under the Sherman Act for restraint of trade. Id., at 160-163. Similarly, in Pfizer, the Court held that a foreign nation, as purchaser of antibiotics, ranked as a "person" qualified to sue pharmaceuticals manufacturers under our antitrust laws. Pfizer, 434 U. S., at 309-320; cf. Stevens, 529 U. S., at 787, and n. 18 (deciding States are not "person[s]" subject to qui tam liability under the False Claims Act, but leaving open the question whether they "can be `persons' for purposes of commencing an FCA qui tam action" (emphasis deleted)); United States v. Cleveland Indians Baseball Co., 532 U. S. 200, 213 (2001) ("Although we generally presume that identical words used in different parts of the same act are intended to have the same meaning, the presumption is not rigid, and the meaning of the same words well may vary to meet the purposes of the law." (internal quotation marks, brackets, and citations omitted)).
 
 
 17
 There is in this case no allegation that the County lacked probable cause or that the warrant was otherwise defective. It is only by virtue of the Tribe's asserted "sovereign" status that it claims immunity from the County's processes. See App. 97-105, ¶¶1-25, 108-110, ¶¶33-39; 291 F. 3d, at 554 (Court of Appeals "find[s] that the County and its agents violated the Tribe's sovereign immunity when they obtained and executed a search warrant against the Tribe and tribal property." (emphasis added)). Section 1983 was designed to secure private rights against government encroachment, see Will, 491 U. S., at 66, not to advance a sovereign's prerogative to withhold evidence relevant to a criminal investigation. For example, as the County acknowledges, a tribal member complaining of a Fourth Amendment violation would be a "person" qualified to sue under §1983. See Brief for Petitioners 20, n. 7. But, like other private persons, that member would have no right to immunity from an appropriately executed search warrant based on probable cause. Accordingly, we hold that the Tribe may not sue under §1983 to vindicate the sovereign right it here claims.[6]
 
 III
 
 18
 In addition to §1983, the Tribe asserted as law under which its claims arise the "federal common law of Indian affairs." Supra, at 4 (quoting App. 97, ¶1). But the Tribe has not explained, and neither the District Court nor the Court of Appeals appears to have carefully considered, what prescription of federal common law enables a tribe to maintain an action for declaratory and injunctive relief establishing its sovereign right to be free from state criminal processes. In short, absent §1983 as a foundation for the Tribe's action, it is unclear what federal law, if any, the Tribe's case "aris[es] under." 28 U. S. C. §1331. We therefore remand for focused consideration and resolution of that jurisdictional question.
 
 
 19
 * * *
 
 
 20
 The judgment of the United States Court of Appeals for the Ninth Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.
 
 
 21
 
 It is so ordered.
 
 
 
 
 Notes:
 
 
 [1]
 The United States maintains, and the County does not dispute, that the Corporation is an "arm" of the Tribe for sovereign immunity purposes. See Brief for United States asAmicus Curiae 11-14.
 
 
 [2]
 At oral argument, the County defended this refusal by asserting that federal law prohibited it from releasing the relevant pages of the employees' welfare applications. See Tr. of Oral Arg. 4-5. But the United States assured the Court that "[t]here is no Federal regulation or other Federal requirement" that would have prevented the County from sharing the relevant information with the TribeId., at 21. This entire controversy, it thus appears, might have been avoided had the county officials understood that federal law allowed the accommodation sought by the Tribe.
 
 
 [3]
 The Tribe did not dispute the State's authority over the crimes under investigation. See Brief for United States asAmicus Curiae 29.
 
 
 [4]
 The relevant portion of 42 U. S. C. §1983 reads: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
 
 
 [5]
 Courts of Appeals have expressed divergent views on this question. SeeNative Village of Venetie IRA Council v. Alaska, 155 F. 3d 1150, 1152, n. 1 (CA9 1998) (concluding that Tribes are persons entitled to sue under §1983); American Vantage Co. v. Table Mountain Rancheria, 292 F. 3d 1091, 1097, n. 4 (CA9 2002) ("[I]t is doubtful whether [a] Tribe qua sovereign would qualify as a `citizen of the United States or other person' eligible to bring an action under §1983." (quoting White Mountain Apache Tribe v. Williams, 810 F. 2d 844, 865, n. 16 (CA9 1987) (Fletcher, J., dissenting))); cf. Illinois v. Chicago, 137 F. 3d 474, 477 (CA7 1998) (stating in dictum that "a state is not a `person' under [§1983]"); Pennsylvania v. Porter, 659 F. 2d 306, 314-318 (CA3 1981) (en banc) (holding that a State may bring a §1983 action in a parens patriae capacity).
 
 
 [6]
 It hardly "demean[s] . . . Native American Tribes," seepost, at 1 (STEVENS, J., concurring in judgment), in our view, to bracket them with States of the Union in this regard.
 
 
 
 22
 JUSTICE STEVENS, concurring in the judgment.
 
 
 23
 In my judgment a Native American tribe is a "person" who may sue under 42 U. S. C. §1983. The Tribe's complaint, however, does not state a cause of action under §1983 because the county's alleged infringement of the Tribe's sovereign prerogatives did not deprive the Tribe of "rights, privileges, or immunities secured by the Constitution and laws" within the meaning of §1983. At bottom, rather than relying on an Act of Congress or a provision of the Constitution, the Tribe's complaint rests on the judgemade doctrine of tribal immunity—a doctrine that "developed almost by accident." Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc., 523 U. S. 751, 756 (1998). Because many applications of that doctrine are both anomalous and unjust, see id., at 760, 764-766 (STEVENS, J., dissenting), I would not accord it the same status as the "laws" referenced in §1983.
 
 
 24
 It is demeaning to Native American tribes to deny them the same access to a §1983 remedy that is available to any other person whose constitutional rights are violated by persons acting under color of state law. The text of §1983—which provides that §1983 defendants are "person[s] who, under color of [State law]" subject any "other person" to a deprivation of a federal right—adequately explains why a tribe is not a person subject to suit under §1983. For tribes generally do not act under color of state law. But that text sheds no light on the question whether the tribe is an "other person" who may bring a §1983 suit when the tribe is the victim of a constitutional violation. The ordinary meaning of the word "person" as used in federal statutes,[1] as well as the specific remedial purpose of §1983, support the conclusion that a tribe should be able to invoke the protections of the statute if its constitutional rights are violated.[2]
 
 
 25
 In this case, however, the Tribe's allegations do not state a cause of action under §1983. The execution of the warrant challenged in this case would unquestionably have been lawful if the casino had been the property of an ordinary commercial corporation. See ante, at 9 ("There is in this case no allegation that the County lacked probable cause or that the warrant was otherwise defective"). Thus, the Tribe rests its case entirely on its claim that, as a sovereign, it should be accorded a special immunity that private casinos do not enjoy. See ibid. That sort of claim to special privileges, which is based entirely on the Tribe's sovereign status, is not one for which the §1983 remedy was enacted.
 
 
 26
 Accordingly, while I agree with the Court that the judgment should be set aside, I do not join the Court's opinion.
 
 
 
 Notes:
 
 
 [1]
 The Dictionary Act, which was passed just two months before §1983 and was designed to supply rules of construction for all legislation, provided that "the word `person' may extend and be applied to bodies politic and corporate...." Act of Feb. 25, 1871, §2, 16 Stat. 431
 
 
 [2]
 Our holding inWill v. Michigan Dept. of State Police, 491 U. S. 58, 65 (1989), that a State is not a "person" within §1983 is fully consistent with this view. Will rested on "the ordinary rule of statutory construction that if Congress intends to alter the `usual constitutional balance between the States and the Federal Government,' it must make its intention to do so `unmistakably clear in the language of the statute.' Atascadero State Hospital v. Scanlon, 473 U. S. 234, 242 (1985); see also Pennhurst State School and Hospital v. Halderman, 465 U. S. 89, 99 (1984)." Ibid.