PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                          No. 06-4578

CHARLES A. BLY,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, District Judge.
(3:04-cr-00011-NKM)

Argued: September 26, 2007

Decided: December 14, 2007

Before MOTZ and KING, Circuit Judges, and
Robert J. CONRAD, Jr., Chief United States District Judge
for the Western District of North Carolina,
sitting by designation.

_____

Affirmed by published opinion. Judge King wrote the majority opinion, in which Judge Conrad joined. Judge Motz wrote a concurring opinion.

_____

## COUNSEL

**ARGUED:** Willis James Spaulding, Charlottesville, Virginia, for Appellant. Jennifer Rebecca Bockhorst, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee. **ON**

**BRIEF:** John L. Brownlee, United States Attorney, Roanoke, Virginia, Jean B. Hudson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.

---

**OPINION**

KING, Circuit Judge:

Charles A. Bly appeals from the district court's refusal to dismiss the portion of an indictment charging him with a violation of 18 U.S.C. § 876(b) (the "§ 876(b) Offense"). Pursuant to a plea agreement, Bly entered a conditional guilty plea in the Western District of Virginia to the § 876(b) Offense, reserving his right of appeal. The charge underlying Bly's conviction alleged, inter alia, that he had "knowingly and with intent to extort from the University of Virginia a sum of money or other thing of value" mailed a written communication containing a threat to injure certain individuals. On appeal, Bly contends that the § 876(b) Offense should have been dismissed for two reasons: first, his statements were not "true threats," but instead were "political hyperbole" protected by the First Amendment; and, second, the charge was fatally defective because the University of Virginia is not a "person" subject to being extorted under § 876(b). As explained below, we reject Bly's contentions and affirm.

I.

A.

Bly earned bachelor's and master's degrees in engineering from the University of Virginia ("UVA," or the "University") in 1978 and 1983, respectively. In 1994, Bly returned to UVA to pursue doctorate studies. He thereafter grew concerned that members of his supervising committee were plagiarizing his work. Although Bly voiced complaints in this regard to the University administration, no action was taken in response. By 2002, having failed to make progress on his dissertation, Bly was dropped from his doctorate program. Soon thereafter, he began writing and sending threatening communications by

mail and email, asserting that UVA personnel had plagiarized his work and treated him unfairly. As relevant here, Bly sent four communications on the following dates: July 30, 2003 (letter); August 12, 2003 (email message); November 29, 2003 (letter); and January 1, 2004 (letter). Bly's letter of January 1, 2004 (the "Letter"), comprised of fifteen pages and addressed to approximately forty-six individuals, is the source of the underlying conviction and gives rise to the issues in this appeal.[1]

The addressees of the Letter included multiple officers and members of the Board of Visitors of the University, various government officials, officers of academic organizations, and others. In the Letter, Bly made various demands on the University, including removal of his thesis advisor's website; an investigation of his list of purported University abuses; publication of those abuses in major news outlets; an audit to expose University wrongdoing; replacement of the UVA President with the Governor of New York; and creation of a nuclear engineering program designed specifically for Bly. Bly also demanded that the University pay him "restitution for civil damages, [and] monetary recompense for these abuses," in the sum of $533,600. J.A. 50.[2]

Importantly, the Letter was replete with what the prosecution deemed threats made by Bly. For example, Bly signaled his intention to seek redress outside legal channels, asserting that "bullets are far cheaper and much more decisive. A person with my meager means and abilities can stand at a distance of two football fields and end elements of long standing dispute with the twitch of my index finger." J.A. 47. Bly also asserted in the Letter that "it would be a shame to brutalize Rydin and Brenizer [another thesis advisor] in order to guarantee that I receive a hearing of my story and a form of justice." *Id.* at 47. With the Letter, Bly enclosed copies of firearms practice targets with bullet holes near their centers to "give[ ] evidence of a talent I

---

[1]Bly's three earlier communications (those preceeding the Letter) of July 30, August 12, and November 29, 2003, relate to counts of the indictment which were dismissed under his plea agreement with the United States Attorney.

[2]Our citations to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

possess for gun control—hitting the target." *Id.* A cover sheet attached to these practice targets read, "TESTIMONY TO MY ABIL-ITY WITH SMALL—BORE AND HIGH—POWER RIFLES. YOU WILL NOTE THIS WILL HAVE NO BEARING ON THE OUT-COME OF OUR WORK, AS LONG AS YOU NOW DO YOUR PART EXPEDITIOUSLY AND HONESTLY, WITH NO FUR-THER OBFUSCATION WHATSOEVER." *Id.* at 53-57 (capitalization in original). Although Bly maintained in the Letter that "[t]hese comments are not to be interpreted as illegal brandishing of a firearm, blackmail, or extortion," he admonished his recipients that, "if this remains class warfare, I assure you tragic consequences." *Id.* at 47.

B.

On February 4, 2004, the federal grand jury in Charlottesville, Virginia, indicted Bly on five counts, including three offenses under 18 U.S.C. § 876(c) (Counts One, Three, and Five), an offense under § 875(c) (Count Two), and the § 876(b) Offense (Count Four). The § 876(b) Offense alleged, in pertinent part, that Bly had sent the Letter "knowingly, and with intent to extort from the University of Virginia a sum of money or other thing of value . . . containing a threat to injure" the persons of Drs. Rydin and Brenizer, in violation of § 876(b). J.A. 19-20.

On March 3, 2004, Bly filed a motion to dismiss the five counts of the indictment, contending, inter alia, that his communications were protected by the First Amendment, and that UVA is not a "person" subject to being extorted under § 876(b). By Order of May 10, 2004, this motion to dismiss was summarily denied. On October 9, 2005, Bly filed an amended motion to dismiss the indictment, seeking to clarify his earlier contentions. In response, the district court filed its Memorandum Opinion and Order of October 14, 2005, denying Bly's amended motion. *See United States v. Bly*, No. 3:04cr00011 (W.D. Va. Oct. 14, 2005) (the "Opinion").[3]

By its Opinion, the district court denied Bly's amended motion to dismiss for two basic reasons. First, the court concluded that the state-

---

[3]The district court's Opinion of October 14, 2005 is found at J.A. 66-74.

ments made by Bly in the Letter were not protected by the First Amendment, in that they were "true threats" rather than constitutionally protected "political hyperbole." Opinion 4.[4] Second, the court ruled that UVA was a "person" subject to being extorted under § 876(b).

On October 13, 2005, the day before the district court issued its Opinion, Bly entered into a plea agreement with the United States Attorney, in which he agreed to plead guilty to the § 876(b) Offense. On October 17, 2005, pursuant to that agreement, Bly entered his guilty plea to the § 876(b) Offense, as charged in Count Four of the indictment. He reserved his right, however, pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure, to appeal the denial of his dismissal motions.[5] On that same day, Bly filed a second amended motion to dismiss, again seeking to clarify his grounds for dismissal, specifically his contention that UVA is not a "person" subject to being extorted under § 876(b). Bly's second amended motion to dismiss was denied on October 18, 2005.

At his May 23, 2006 sentencing hearing in the district court, Bly was sentenced to a term of imprisonment equal to "time served," plus

---

[4]The Letter, which is not spelled out *in haec verba* in the indictment, was apparently submitted to the district court in connection with its consideration of Bly's motions to dismiss.

[5]Rule 11(a)(2) of the Federal Rules of Criminal Procedure provides, in pertinent part, as follows:

> With the consent of the court and the government, a defendant may enter a conditional plea of guilty . . . reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion.

Pursuant to the plea agreement, Bly agreed with the prosecution on his potential appeal in the following terms:

> I understand that I will maintain my right to appeal the trial court's denial of my motion to dismiss the count to which I am pleading guilty. The United States agrees that my guilty plea does not operate as a waiver of my right to appeal the legal issue presented in that motion, and that such an appeal is proper.

J.A. 81.

three years of supervised release. After Bly was sentenced on the § 876(b) Offense, Counts One, Two, Three, and Five of the indictment were dismissed, pursuant to the plea agreement. On May 31, 2006, Bly filed a notice of appeal, and the district court's judgment was entered on June 2, 2006.[6] We possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Bly's appeal presents two separate contentions. First, he maintains that the Letter contained constitutionally protected "political hyperbole," and not an unprotected "true threat" to injure Drs. Rydin and Brenizer. Second, he contends that UVA is not a "person" subject to being extorted under § 876(b), and that the § 876(b) Offense fails for that independent reason. Whether a written communication contains either constitutionally protected "political hyperbole" or an unprotected "true threat" is a question of law and fact that we review de novo. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 506-11 (1984). Whether an indictment properly charges a criminal offense — specifically, in this appeal, whether UVA is a person subject to being extorted under § 876(b) — is a question of law which we also review de novo. *United States v. Darby*, 37 F.3d 1059, 1062 (4th Cir. 1994).

## III.

The statute underlying the § 876(b) Offense provides, in pertinent part, as follows:

> Whoever, with intent to extort from any person any money or other thing of value, so deposits, or causes to be delivered [by mail] any communication containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be [guilty of an offense against the United States].

---

[6]Pursuant to Rule 4(b)(2) of the Federal Rules of Appellate Procedure, a notice of appeal filed after the district court announces its decision, but prior to the entry of judgment, is deemed to be "filed on the date of and after the entry."

18 U.S.C. § 876(b). In order for the prosecution to sustain a conviction under § 876(b), three essential elements must be established. That is:

(1)    The defendant must have caused the mailing of a written communication;

(2)    Such written communication must have contained a threat to kidnap any person or to injure the person of the addressee or of another (the "Threat Element"); and

(3)    The defendant must have intended such communication to extort from any person money or other thing of value (the "Extortion Element").

In this appeal, Bly makes contentions with respect to both the Threat and Extortion Elements — contentions that he characterizes as challenges to the legal sufficiency of the indictment in alleging those elements. Bly's contention on the Threat Element, however, is not a legal sufficiency issue; rather, it is an issue of failure of proof on the part of the prosecution. Specifically, Bly maintains that the Threat Element cannot be satisfied because, as a matter of law, the Letter did not contain any "true threats," but instead contained constitutionally protected "political hyperbole." By contrast, Bly's second contention, relating to the Extortion Element, constitutes a legal sufficiency issue. In this regard, Bly asserts the § 876(b) Offense's allegation of the Extortion Element is fatally defective because UVA is not a "person" subject to being extorted under § 876(b). We assess these contentions in turn.

A.

As explained below, Bly's first contention of error — that the statements contained in the Letter are protected by the First Amendment — fails to pass muster and must be rejected. Put simply, the First Amendment was not intended to protect every oral or written utterance. *Beauharnais v. People of State of Ill.*, 343 U.S. 250, 266 (1952). Threats — including threats of extortion — are not constitutionally protected simply because they are verbalized or written. *United States*

*v. Marchetti*, 466 F.2d 1309, 1314 (4th Cir. 1972); *see also R.A.V. v. St. Paul*, 505 U.S. 377, 388 (1992) (concluding that threats of violence are outside First Amendment protection). True threats have been characterized by the Supreme Court as statements made by a speaker who "means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group." *Virginia v. Black*, 538 U.S. 343, 359 (2003).

Although the First Amendment does not protect true threats, it does protect statements that constitute political hyperbole. *See Watts v. United States*, 394 U.S. 705, 705-08 (1969). In pursuing his First Amendment contention, Bly maintains that the communications contained in the Letter are constitutionally protected because they are best characterized as political hyperbole. As explained below, Bly's reliance on the *Watts* decision is misplaced.

Watts, an anti-Vietnam war protestor, asserted at a public rally in Washington, D.C., that "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J. [President Lyndon Baines Johnson]." *Watts*, 394 U.S. at 706. The Supreme Court held that this statement did not constitute a true threat, and that it instead was political hyperbole protected by the First Amendment. *Id.* at 708. In so ruling, the Court looked to and relied upon several contextual factors. Watts's statement, "[i]f they ever make me carry a gun," was expressly conditioned on a trigger event — being drafted into the military — that removed the imminence of the threat. *Id.* at 707. Also, Watt's statement was made at a public rally on a topic of great national concern. *Id.* at 708. As the Court pointed out, even "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials" should not constitute proscribed speech "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wideopen." *Id.* Additionally, the audience's reaction to Watt's statement was not fear, but laughter. *Id.* at 707. Based on this analysis, the Court concluded that Watt's statement was not a true threat, but was rather constitutionally protected political hyperbole.

Our decision in *United States v. Lockhart* is a further illustration of how allegedly threatening statements should be assessed. *See* 382 F.3d 447 (4th Cir. 2004). Lockhart, a job applicant, had approached

a Food Lion supervisor about available positions. *Id.* As Lockhart was leaving, she handed the supervisor a letter which stated, "if George Bush refuses to see the truth and uphold the Constitution, I will personally put a bullet in his head." *Id.* at 450. We concluded that Lockhart's statement constituted a true threat. *Id.* at 452. In so ruling, we distinguished Lockhart's threat from the statement made by the protestor in *Watts* for several reasons. First, although Lockhart's threat was grammatically conditional, it was not expressly so. *Id.* at 452. Watts had conditioned his threat upon being drafted into the military; by contrast, it was not clear what might have precluded Lockhart from carrying out her threat of violence. *Id.* Second, there was no indication that Lockhart's letter was meant as a joke. *Id.* Third, the context in which the Lockhart letter had been handed to the Food Lion supervisor was private, as opposed to the public anti-war rally in *Watts*. *Id.* Finally, there was no indication that Lockhart intended to engage in political discourse with Food Lion management. *Id.* Thus, her statements were not protected by the First Amendment and her conviction was sustained. *Id.*

Our assessment of Bly's Letter reveals that the statements contained therein are more akin to those made in *Lockhart*, and thus do not enjoy any First Amendment protection. Unlike in *Watts*, the Letter was not addressed to a public audience and, as in *Lockhart*, it was delivered privately to specific individuals. Bly's communications were only grammatically conditional, and he both implicitly and explicitly promised violent retribution if he did not receive the result he sought. As the district court aptly stated, "[t]he reader is left unsure what measure of justice would appease Mr. Bly." Opinion 4. In these circumstances, the Letter contained true threats and the statements contained therein are not protected by the First Amendment.

### B.

We also reject Bly's second appellate contention, challenging the legal sufficiency of the Extortion Element. Bly maintains that his conviction is defective and must be vacated because UVA is not a "person" subject to being extorted under § 876(b) — an issue of first impression in our circuit. He makes two primary assertions in support of this contention. First, relying on principles of statutory construction, he maintains that the relevant meaning of the term "person" in

§ 876(b) is limited to a living person only, and does not include an entity such as UVA.[7] Second, Bly contends that, even if some entities can qualify as persons subject to being extorted under § 876(b), UVA is an arm of the sovereign, i.e., the Commonwealth of Virginia, that cannot be a "person" for purposes of the Extortion Element. Bly's assertions fail for the reasons discussed below.[8]

1.

a.

The starting point for any issue of statutory interpretation — such as Bly's assertion that the term "any person" in § 876(b) refers only to live persons — is the language of the statute itself. *United States v. Abuagla*, 336 F.3d 277, 278 (4th Cir. 2003). "In that regard, we must first determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute . . . and our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *See United States v. Hayes*, 482 F.3d 749, 752 (4th Cir. 2007) (internal quotation marks omitted). Whether a statutory term is plain and unambiguous is determined not only by the language of the statute itself, but also by how it is used and the context of the statute as a whole. *Id.* As the Supreme

---

[7]Bly appears to use the term "natural persons" as if it should be limited to human beings only. The Supreme Court has recognized, however, that a corporation is deemed to be a natural person for virtually all purposes of constitutional and statutory analysis. *See Monell v. Dep't of Social Serv. of City of New York*, 436 U.S. 658, 687 (1978); *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 666-67 (1979). As a result, we refer to Bly's proposed natural person limitation as relating to "live," "living," or "living and breathing" persons.

[8]In its brief on appeal, the Government alternatively maintains that the § 876(b) Offense is valid because, although UVA was the alleged extortion victim, it would have been the responsibility of the individual addressees of the Letter — including members of the University's Board of Visitors, its President, and its General Counsel — to respond to Bly's demands. UVA was the entity to which Bly's extortion demand was directed, however, and it was the entity with the resources to possibly satisfy his demands. The § 876 Offense thus properly specified in the Extortion Element that UVA was the victim of the § 876(b) Offense.

Court has explained, "[t]he plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (internal quotation marks omitted).

The term "person" appears in § 876(b) three times, in two distinct contexts. As first used in § 876(b), in the Extortion Element, the term "any person" (in the phrase "intent to extort from any person") describes the permissible victim of an extortion demand.[9] The term "person" is then used in § 876(b) on two other occasions, both as part of the Threat Element: in the phrase "kidnap any person" to describe the potential victim of a threat to kidnap, and in the phrase "injure the person of the addressee or of another" to describe the type of harm threatened against the potential victim of a threat to injure. Although threats to kidnap a person and to injure the person of another are realistically limited to live persons, it is entirely reasonable to conclude that an artificial entity, such as UVA, can be the victim of an extortion demand. Moreover, under ordinary usage, the term "person" is defined as "a human being, a body of persons, or a corporation, partnership, or other legal entity that is recognized by law as the subject of rights and duties." *Webster's Dictionary*, 1686 (3d ed. 2002) (emphasis added). Thus, a plain meaning assessment of § 876(b) compels us to conclude that the term "person," as used in the Extortion Element, is not limited to living and breathing persons.[10] The

[9]The modification of "person" by use of the word "any" in the Extortion Element of § 876(b) appears to manifest a congressional intention of being broadly inclusive. According to *Webster's*, "any" means, inter alia, "one or some of whatever kind of any sort." *Webster's Dictionary*, 97 (3d ed. 2002).

[10]Bly relies on certain court decisions to support his position that, under § 876(b), only living persons can be the subject of extortion. Those authorities are inapposite, however, because they do not relate to the term "person" as it is used in the Extortion Element of § 876(b). Indeed, those decisions address the construction of "person" as that term is used in § 876(c), which lacks an extortion element. *See, e.g.*, *United States v. Williams*, 376 F.3d 1048, 1052-53 (10th Cir. 2004) (concluding that "person," as used in § 876(c) to describe element of threat to injure, is limited to live persons); *United States v. Brownfield*, 130 F. Supp. 2d 1177, 1180-81 (C.D. Cal. 2001) (same).

Supreme Court has strongly buttressed this conclusion by its recognition in *Monell v. Dep't of Social Serv. of City of New York*, 436 U.S. 658, 687 (1978), that "it is well understood that corporations should be treated as natural persons for virtually all purposes of constitutional and statutory analysis."

b.

Bly nevertheless contends that our interpretation of the term "person" is controlled by the rule of "uniform usage," i.e., that "identical terms used in the same sentence of a statute carry the same meaning." *Yi v. Fed. Bureau of Prisons*, 412 F.3d 526, 533 (4th Cir. 2005). The uniform usage rule is not to be applied, however, "when there is a variation in how the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." *Id.* Moreover, if a statutory term has multiple commonly understood and accepted meanings, among which a speaker may alternate without confusion, the rule of uniform usage will readily yield. *See Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 595-96 (2004).

Although Bly contends that the principle of uniform usage should control our analysis of the Extortion Element of § 876(b), the context in which the term "any person" is used therein plainly indicates that it does not refer solely to living persons. On this point, the district court correctly recognized that "[t]his is the kind of 'variation' in the connection in which words are used which warrants the conclusion that the meaning of 'person' could be used in a narrow and a broader sense within the same paragraph." Opinion 7. In the context of the term "person" in the Extortion Element, we agree with the district court.[11]

---

[11]Bly also maintains that the use of the term "person" in 18 U.S.C. § 875 (which he characterizes as a parallel statute) supports his interpretation of the Extortion Element of § 876(b). According to Bly, because Congress explicitly included "firm, association, or corporation," in addition to "person," in § 875, the omission of those terms from § 876 mandates his interpretation of the term "any person" in the Extortion Element. We have recognized that, under ordinary principles of statutory construction, "where Congress includes particular language in one section of a statute but omits it in another provision of the same Act, it is

2.

Bly next asserts that even if the term "any person" in the Extortion Element includes some non-natural persons, it still does not cover UVA. He relies for this assertion on the Dictionary Act, 1 U.S.C. § 1, which includes entities like corporations (but not governmental entities) in its definition of "person." According to Bly, UVA, as a public university, is an extension of the Commonwealth of Virginia, and is thus not a corporation or other entity within in the Dictionary Act's definition of the term "person." As explained below, although the Dictionary Act does not expressly include governmental bodies in its definition of the term "person," that omission is neither controlling nor persuasive.[12]

In assessing the meaning of a statutory term, our Court is necessarily guided by the provisions of the Dictionary Act. *See* 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the words 'person' and 'whoever' include *corporations*, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." (emphasis added)). Unless the context of a statute indicates otherwise, the definitions supplied by the Dictionary Act are to be used to determine the meaning of the terms contained in an Act of Congress. *Id.* And, the Supreme Court has applied the Dictionary Act's definition of the term "person" to the statutes defining criminal offenses in Title 18 of the

---

generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Soliman v. Gonzales*, 419 F.3d 276, 283 (4th Cir. 2005). Unfortunately for Bly, § 875 and § 876 were not enacted into law as part of the same statute. Section 876 was enacted in 1932, but § 875 was not enacted until 1934. Because § 876 was enacted two years prior to § 875, the parallel statute rule does not assist Bly.

[12]The logical extension of Bly's contention that UVA is not a "person" under the Extortion Element because it is a part of the Commonwealth would lead to an absurd result — if Bly had made his extortion demands to a private college, § 876(b) would, under his contention, be applicable and he could be prosecuted for an § 876(b) Offense. *See Aremu v. Dep't of Homeland Sec.*, 450 F.3d 578, 583 (4th Cir. 2006) (noting "settled rule that a court must, if possible, interpret statutes to avoid absurd results").

United States Code. *See United States v. A & P Trucking*, 358 U.S. 121 (1958).

Under Virginia law, UVA is both a corporation and a department of the government of Virginia. Indeed, the Virginia Code provides that UVA's Board of Visitors, which is charged with "the care and preservation of all property belonging to the University," is an entity that "shall be and remain a corporation." Va. Code §§ 23-69, 23-76. And, the Supreme Court of Virginia has determined UVA to be both "a corporation and a department of the government." *Batcheller v. Commonwealth*, 10 S.E.2d 529, 535 (Va. 1940). The district court relied on this legal principle in ruling on Bly's Extortion Threat contention. In response to Bly's second amended motion to dismiss, which focused primarily on whether UVA is a person subject to being extorted under § 876(b), the court explained that,

> the Defendant's motion is without merit. Va. Code § 23-69 provides that the Board of Visitors of the University of Virginia "shall be and remain a corporation" and Va. Code § 23-76 vests the Board "with the care and preservation of all property belonging to the University."

J.A. 88. We agree with the district court — UVA is more than an extension of the Commonwealth of Virginia and, under Virginia law, it is a corporation. *See* Va. Code §§ 23-69, 23-76; *Batcheller*, 10 S.E.2d at 535.

Finally, Bly's proposition that the term "person," as used in the Extortion Element, should exclude all sovereign entities and their subparts, has little appeal in the criminal law context. *See United States v. Cooper Corp.*, 312 U.S. 600, 604-05 (1941) (concluding that rule excluding sovereign from term "person" may be overcome by analysis of purpose, subject matter, context, and other relevant considerations).[13]

---

[13]Several federal courts have recognized that a government entity can be the victim of a crime. *See, e.g. United States v. Ekanem*, 383 F.3d 40, 43-44 (2d Cir. 2004) (2d Cir. 2004) (concluding that "victim" under Mandatory Victims Restitution Act not limited by Dictionary Act's definition of "person" and also includes government); *United States v. Fountain*, 768 F.2d 790, 802 (7th Cir. 1985) (concluding that Department of Labor can be victim under Victim and Witness Protection Act).

In support of this proposition, Bly relies on two Ninth Circuit decisions arising under 18 U.S.C. § 1153 (Indian major crimes statute). *See United States v. Errol D.*, 292 F.3d 1159, 1162 (9th Cir. 2002) (alleging victim to be Bureau of Indian Affairs); *United States v. Belgarde*, 300 F.3d 1177, 1179 (9th Cir. 2002) (alleging victim to be the Montana Department of Family Services). The Ninth Circuit ruled in those cases that a government entity could not be a victim under § 1153, because such an entity was not a living person. Even if correctly decided, those decisions seem readily distinguishable from our Extortion Element issue, in that § 1153 appears, by its terms, to relate exclusively to living persons. 18 U.S.C. § 1153 ("Any Indian who commits *against the person* or property *of another Indian or other* person any of the following offenses . . . [shall be guilty of a crime against the United States]." (emphasis added)).

The question of whether the statutory use of the term "person" excludes governmental entities arises primarily in civil litigation, such as when a litigant seeks damages from a state entity, or in suits over whether Congress has subjected a state entity to monetary liability. Put simply, the financial considerations readily apparent in such civil disputes are hardly relevant (much less controlling) to our resolution of a criminal law question like that presented here — whether a governmental entity can be the victim of an extortion demand under § 876(b). *Cf. Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780-87 (2000) (concluding that False Claims Act did not subject state to liability in *qui tam* action); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) (ruling that state is not "person" within meaning of § 1983).[14] Indeed, policy con-

---

[14]The other authorities upon which Bly relies in his appellate brief are readily distinguishable, in that they relate to civil proceedings only. *See Va. Office for Protection and Advocacy v. Reinhard*, 405 F.3d 185, 189 (4th Cir. 2005) (recognizing that Virginia state agency was not "person" who could sue under § 1983); *Al Fayed v. C.I.A.*, 229 F.3d 272, 273 (D.C. Cir. 2004) (concluding that "person" subject to subpoena did not include federal government); *Donald v. Univ. of Ca. Bd. of Regents*, 329 F.3d, 1040, 1044 (9th Cir. 2003)(recognizing that state is not "person" subject to liability under False Claims Act); *Commonwealth of Va. v. Bd. of Supervisors of Spotsylvania County*, 225 Va. 492, 494-95 (1983) (recognizing that Virginia is not "person" subject to filing deadline for purposes of suit to collect fee reimbursement).

cerns such as comity and parity — that could impact federalism issues between state and federal sovereigns — are not pertinent here. We are today called upon to assess only the issue of whether a university connected to one of the states can be an extortion victim under § 876(b); not whether Congress is empowered to impose potential civil liability on some state entity.

Thus, Bly's contention that governmental entities are excluded from the definition of "person" in the Dictionary Act, and that UVA is not subject to being extorted under § 876(b), is unconvincing. *See Vermont Agency of Natural Res.*, 529 U.S. at 781; *see also Georgia v. Evans*, 316 U.S. 159, 161-63 (1942) (recognizing Georgia as person under antitrust statute). As the district court properly observed in assessing this contention, there is nothing in § 876(b) to indicate that Congress intended to protect only living persons from the extortion demands criminalized in § 876(b). *See* Order 7. In context, it is clear that Congress, by using the term "any person" in the Extortion Element, intended "to penalize every extortion demand by mail which is coupled with an express threat or with any language or expression which carries with it the reasonable connotation of a threat." *United States v. Prochaska*, 222 F.2d 1, 2 (7th Cir. 1955). As such, UVA — for the purposes of the Extortion Element of § 876(b) — qualifies as a person subject to being extorted under § 876(b).

IV.

Pursuant to the foregoing, we reject Bly's contentions and affirm the judgment of the district court.

*AFFIRMED*

DIANA GRIBBON MOTZ, Circuit Judge, concurring:

I respect the majority's position and completely agree with its reasoning with respect to the First Amendment issue. I also concur in the judgment. In my view, however, whether the term "person" in 18 U.S.C. § 876(b) includes the University of Virginia presents a very difficult question. Although ultimately I agree with the majority's conclusion, I write separately because I reach this conclusion for somewhat different reasons.

## I.

The Supreme Court has expressly recognized that the "presumption that 'person' does not include the sovereign" in federal statutes is "longstanding." *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780 (2000). More than sixty years ago, Congress passed the 1947 Dictionary Act, legislating against this background presumption, providing that the word "person" includes corporations and partnerships. General Provisions, 80 cong. ch. 388, 61 Stat. 633 (1947) (codified as amended at 1 U.S.C.A. § 1 (West 2005)).

The Court then linked the longstanding presumption to the Dictionary Act, explaining that "[t]he absence of any comparable provision extending the term to sovereign governments implies that Congress did not desire the term to extend to them." *United States v. Mine Workers*, 330 U.S. 258, 275 (1947). In 1948, after the decision in *Mine Workers*, Congress appeared to ratify this position when it amended the Act by expanding the term "person" to include numerous other legal entities but declining to include sovereign entities as "persons." *See* Act of June 25, 1948, 80 cong. ch. 645, sec. 6, 62 Stat. 859; *see also Ankenbrandt v. Richards*, 504 U.S. 689, 700-01 (1992) (presuming that, when Congress makes other substantive changes to a statute but does not indicate an intent to change a prior construction, Congress has adopted that interpretation).

The Court has expressly held that, for purposes of this presumption, "sovereign" includes a state or state agency. *Vt. Agency*, 529 U.S. at 778, 780-81. Therefore, the presumption would apply to the University of Virginia, a state agency. *See Cent. Va. Cmty. Coll. v. Katz*, 126 S. Ct. 990, 994 (2006). Moreover, the Court has instructed that while the presumption is not "hard and fast," we can only disregard it "upon some affirmative showing of statutory intent to the contrary." *Vt. Agency*, 529 U.S. at 781.

The Government offers little in the way of an "affirmative showing of statutory intent," to justify disregard of the presumption.

It does point to the fact that, in addition to being a state agency, the University is a corporation under state law. This is true but irrelevant. The Supreme Court has never suggested that the state law designation

of a sovereign entity as a corporation eliminates that entity's status as a sovereign. Indeed, when a sovereign Indian Tribe and a corporation that was an "'arm' of the Tribe" sought to be recognized as "person[s]" under a federal statute, the Supreme Court denied this status to both the Tribe and corporation, without distinguishing the two, because both were sovereign entities. *Inyo County v. Paiute-Shoshone Indians*, 538 U.S. 701, 704, 705 n.1 (2003). Similarly, the Court has recognized that although "state officials literally are persons," they are nonetheless presumed *not* to be included within the statutory term "person" when acting in their "official capacity" because in those circumstances they are "no different from . . . the State itself." *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 64, 71 (1989).

The only other reason the Government offers for disregarding the presumption is that § 876(b) is a criminal statute. Again, the Supreme Court has not suggested that the presumption reflected in the 1947 Dictionary Act does not apply to criminal statutes. Rather, as the majority recognizes, "the Supreme Court has applied the Dictionary Act's definition of the term 'person' to the statutes defining criminal offenses in Title 18 of the United States Code." *Ante* at 13-14 (citing *United States v. A & P Trucking Co.*, 358 U.S. 121 (1958)); *see also United States v. Ekanem*, 383 F.3d 40, 42-43 (2d Cir. 2004) (recognizing that the presumption would apply but finding that the statutory context nevertheless indicates that "person" includes government entities as potential victims in the Mandatory Victims Restitution Act); *United States v. Errol D.*, 292 F.3d 1159, 1162-63 (9th Cir. 2002) (recognizing that the presumption applies and holding that "person" does not include a federal agency as a potential victim in the Major Crimes Act); *United States v. Belgarde*, 300 F.3d 1177, 1181 (9th Cir. 2002) (relying upon *Errol D.* and holding that "person" does not include a state agency as a potential victim in the Major Crimes Act).

Accordingly, if we were to apply the presumption as reflected in the 1947 Dictionary Act and then end our inquiry looking only to the Government's proffered "affirmative showing," I would be inclined to reverse. But, it is not at all clear that our analysis ends here.

II.

Congress enacted § 876(b) in 1932, over a decade before the 1947 Dictionary Act. *See* Act of July 8, 1932, 72 cong. ch. 464, 47 Stat.

649 (codified as amended at 18 U.S.C. § 876(b) (2000)). Supreme Court precedent from that time established a different analysis for determining whether "person" includes the sovereign than the approach reflected in the 1947 Dictionary Act and the more modern cases, like *Vermont Agency*, 529 U.S. 765.

In *Nardone v. United States*, decided only a few years after Congress enacted § 876(b), the Court recognized the "canon that the general words of a statute do not include the government." 302 U.S. 379, 383 (1937) (citing and explaining numerous prior cases involving the canon).* The Court held, however, that the canon applied to *only* two categories of statutes: (1) those which, "if not so limited, would deprive the sovereign of a recognized or established prerogative[,] title[,] or interest"; and (2) those in which a reading that includes the sovereign "would work obvious absurdity." *Id.* at 383-84. Finding that the statute at issue did not fall into either category, the Court declined to apply the canon. Instead, it applied "another well recognized principle": "that the sovereign is embraced by general words of a statute intended to prevent injury and wrong." *Id.* at 384.

If we simply applied the principles articulated by the *Nardone* Court, the term "person" in § 876(b) certainly would include a sovereign entity, like the University of Virginia. For including the University within the term "person" for purposes of § 876(b) neither deprives

---

*It might seem odd to turn to the judicial understanding of the term "person," rather than the then-current version of the Dictionary Act, which also defined the term. At the time that § 876 was enacted, the 1871 Dictionary Act was in force, *see* Act of Feb. 25, 1871, 41 cong. ch. 71, § 2, 16 Stat. 431, but the Supreme Court has instructed that the 1871 Act's definition of "person" fails to evidence a clear intent as to whether the sovereign is a person, *see Will*, 491 U.S. at 64, 69. Moreover, *Nardone* does not cite the 1871 Act when discussing the "canon" or "well recognized principle . . . that the sovereign is embraced by general words of a statute intended to prevent injury and wrong." 302 U.S. at 384. Nor does *United States v. Cooper Corp.*, in which the Court expressly relied on *Nardone* for the proposition that "in common usage, the term 'person' does not include the sovereign." 312 U.S. 600, 604-05 & n.6 (1941). Thus, *Nardone*, rather than the 1871 Dictionary Act, provides the best evidence of whether "person" was understood to include a sovereign entity when Congress enacted § 876(b).

the University of a "recognized or established prerogative[,] title[,] or interest," nor produces an absurd result. *Id.* at 383-84. Further, this reading accords with *Nardone*'s "well recognized principle," as a statute criminalizing extortion surely is "intended to prevent injury and wrong." *Id.* at 384.

III.

Therefore, as I see it, determining whether the University is a "person" for purposes of § 876(b) hinges upon whether we look to the current Dictionary Act or *Nardone*. Although the question is not free from doubt, I believe that we should look to the latter. This approach accords with the Supreme Court's general interpretive assumption that Congress formulates new legislation with awareness of prior interpretations of the terms used in that legislation. *See, e.g.*, *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 160-61 (2003); *see also* 2A Norman J. Singer, Sutherland Statutes and Statutory Construction § 47:30 (rev. 7th ed. 2007).

No Supreme Court case, however, directly addresses the question we face, and the closest precedent, *Will*, 491 U.S. 58, is not terribly helpful. In *Will*, the Court considered whether a state and its officials were "persons" for purposes of 42 U.S.C. § 1983. The *Will* Court noted the presumption that "person" excludes the sovereign, *id.* at 64, but also looked to the understanding of the word "person" at the time Congress enacted § 1983 in 1871, *id.* at 69-70 & n.9, along with other tools of statutory interpretation, *id* at 67-69. In *Will*, the presumption and contemporaneous understanding of the term "person" at the time Congress enacted § 1983 did not produce conflicting results; neither indicated that "person" included the sovereign. For this reason, *Will* provides no guidance as to whether the presumption or the then-current understanding of the word is the proper interpretive tool when the two do conflict. *Cf. Ngiraingas v. Sanchez*, 495 U.S. 182, 192 (1990) (concluding that the presumption, language, purpose, and contemporary understanding all support the same result under § 1983).

The Supreme Court, however, has long and consistently recognized that determining whether a sovereign is a "person" "depends not 'upon a bare analysis of the word person' . . . but on the 'legislative environment' in which the word appears,'" *Inyo*, 538 U.S. at 711 (cit-

ing *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 317 (1978) and *Georgia v. Evans*, 316 U.S. 159, 161 (1942)); *see also Cooper*, 312 U.S. at 605 & n.6. To determine whether the term "person" includes the sovereign in a given context, the Court examines "all . . . available aids to construction," including legislative purpose, subject matter, context, history, executive interpretation, and "the policy intended to be served by the enactment." *Pfizer*, 434 U.S. at 313, 316 (quoting *Cooper*, 312 U.S. at 605); *see also Ngiraingas*, 495 U.S. at 192 (applying all of these aids to construction); *Will*, 491 U.S. at 64-70 (same).

We have few of these tools to guide us in determining whether "person" in § 876(b) includes a sovereign entity, such as the University of Virginia — the statute's legislative history provides no help and its purpose also does not dictate a result. But it seems to me that the "legislative environment," *Inyo*, 538 U.S. at 711, must include the "well recognized principle" articulated in *Nardone* and existing at the time Congress enacted § 876(b), that the term "person" in a statute "intended to prevent injury and wrong" embraced the sovereign. *See Yousuf v. Samantar*, 451 F.3d 248, 253-55 (D.C. Cir. 2006) (applying the principle articulated in *Nardone* to Federal Rule of Procedure 45, which was adopted prior to the 1947 Dictionary Act). Moreover in § 876(b), Congress sought "to penalize every extortion demand by mail which is coupled with an express threat," *United States v. Prochaska*, 222 F.2d 1, 2 (7th Cir. 1955), and punishing threats against a sovereign entity unquestionably furthers this policy.

Accordingly, because both the contemporary understanding of the relevant principle of statutory construction and "the policy intended to be served by the" statute, *Pfizer*, 434 U.S. at 316, support the conclusion that "person" in § 876(b) includes a sovereign entity like the University of Virginia, I agree with the majority that it does.